HYMAN ISRAEL, Appellant, *v.* THE MANHATTAN RAILWAY COMPANY and THE METROPOLITAN ELEVATED RAILWAY COMPANY, Respondents.

1. APPEAL — INCONSISTENT FINDINGS. While an appellate court should harmonize inconsistent findings when it is possible to do so, if they prove irreconcilable it is the duty of the court to accept those most favorable to the appellant.

2. FINDING WITHOUT EVIDENCE. On appeal from a judgment of affirmance, rendered by a late General Term, a finding made without evi-

dence to sustain it is a ruling upon a question of law, which, when duly excepted to, it is the duty of the Court of Appeals to review.

3. ELEVATED RAILROAD — DAMAGES — VALUES OF ABUTTING PROPERTY KEPT DOWN BY PRESENCE AND OPERATION OF ROAD. When land abutting on Sixth avenue at Fortieth street, in the city of New York, on which there is a hotel, built before the elevated railroad in the avenue, falls, after the coming of the road, below the value which it had before the panic of 1873, and the rents fall below even their panic value, and both fail to make up the loss, and values on the avenue have remained comparatively stationary, although the locality was built up before the road was constructed, while property on abutting streets in the immediate neighborhood, with no railroad in front of it, advances rapidly both in fee and rental values, in the absence of any explanation the inference is irresistible that the presence and operation of the road kept down the values of the abutting property.

4. BENEFIT FROM STATION. The mere presence of an elevated railroad station two blocks away is not necessarily a benefit to hotel property; and if the existence of such benefit is claimed, it cannot be assumed, but facts must be shown from which the inference can reasonably be drawn.

*Israel* v. *Metropolitan R. R. Co.*, 10 Misc. Rep. 722, reversed.

(Argued March 14, 1899; decided April 18, 1899.)

APPEAL from a judgment of the General Term of the late Court of Common Pleas for the city and county of New York, entered January 26, 1895, affirming a judgment entered upon the decision of the court at Special Term dismissing the complaint upon the merits.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William B. Hornblower, John Frankenheimer* and *Nathan Ottinger* for appellant. The dismissal, though purporting to be upon the merits, was in fact a nonsuit. The evidence was such that a nonsuit was error. (*Place* v. *Hayward,* 117 N. Y. 487; *Raabe* v. *Squier,* 148 N. Y. 81; *Scofield* v. *Hernandez,* 47 N. Y. 313; *Forbes* v. *Chichester,* 125 N. Y. 769; *Cowan* v. *Paddock,* 137 N. Y. 188; *Terry* v. *Horne,* 59 Hun, 492; *Myers* v. *Polhemus,* 77 Hun, 587; *Babcock* v. *Stimmel,* 11 N. Y. Supp. 506; *Del Valle* v. *Hyland,* 40 N. Y. S. R. 924; *Ten Eyck* v. *Whitbeck,* 156 N. Y. 341.) Not

only did the evidence render a nonsuit improper, but, taken in connection with the specific findings, it required, as matter of law and upon the merits, a judgment in favor of the plaintiff. (*Cox* v. *Stokes*, 156 N. Y. 504; *White* v. *Benjamin*, 150 N. Y. 258; *Jamieson* v. *K. C. El. R. Co.*, 147 N. Y. 322.) The cause of action for fee damage was established by the credited evidence and the findings of the Special Term. (*Bischoff* v. *N. Y. E. R. R. Co.*, 138 N. Y. 257; *Becker* v. *M. E. R. Co.*, 131 N. Y. 511; *Struthers* v. *N. Y. El. R. R. Co.*, 54 N. Y. S. R. 785; *McCracken* v. *West*, 17 Ohio, 16; *Schenck* v. *Andrews*, 57 N. Y. 133; *McGean* v. *M. R. Co.*, 117 N. Y. 225; *Otten* v. *M. R. Co.*, 2 App. Div. 396; *Storck* v. *M. E. R. Co.*, 131 N. Y. 514; *Adler* v. *M. E. R. Co.*, 138 N. Y. 173.) Rental damage was shown by the findings of the Special Term and by the uncontradicted evidence. (*McGean* v. *M. R. Co.*, 117 N. Y. 219; *Cox* v. *Stokes*, 156 N. Y. 491; *Bischoff* v. *N. Y. E. R. R. Co.*, 138 N. Y. 264; *Wright* v. *N. Y. E. R. R. Co.*, 78 Hun, 450.) There is no evidence that the defendant's structure was built with legislative or municipal consent. It, therefore, constitutes a nuisance, and the plaintiff being specially injured was entitled to an injunction. (*Fanning* v. *Osborne*, 102 N. Y. 441; *Lamming* v. *Galusha*, 135 N. Y. 239; *Negus* v. *City of Brooklyn*, 10 Abb. [N. C.] 180; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 144; *Jorgensen* v. *Squires*, 144 N. Y. 283; *Davis* v. *Mayor, etc.*, 14 N. Y. 514; *Milhau* v. *Sharp*, 27 N. Y. 611; *People* v. *Kerr*, 27 N. Y. 188; *Irvine* v. *A. A. R. R. Co.*, 10 App. Div. 560; *Eels* v. *A. T. & T. Co.*, 143 N. Y. 133.) Defendant's structure being unauthorized by law, plaintiff was entitled to an injunction on the theory of a continuing trespass. (*Shepard* v. *M. R. Co.*, 117 N. Y. 442; *Lynch* v. *M. E. R. Co.*, 129 N. Y. 274; *Hunter* v. *M. R. Co.*, 141 N. Y. 281; *Lamming* v. *Galusha*, 135 N. Y. 239.) Equity will restrain a course of action which, if persisted in, will, by prescription, deprive plaintiff of a right. (*Wheelock* v. *Noonan*, 108 N. Y. 179; *Johnson* v. *Rochester*, 13 Hun, 285; *Meyer* v. *Phillips*, 97 N. Y. 485; *Knox* v. *M. El. R. R. Co.*, 58

Hun, 523 ; High on Injunctions, §§ 622, 702, 852 ; *O'Reilly* v. *N. Y. E. R. R. Co.*, 148 N. Y. 347.) The judgment must be reversed because the court made findings of fact wholly unsupported by evidence. (*Halpin* v. *P. Ins. Co.*, 118 N. Y. 165 ; *Struthers* v. *N. Y. E. R. R. Co.*, 54 N. Y. S. R. 785 ; *Bischoff* v. *N. Y. E. R. R. Co.*, 29 J. & S. 211 ; *Adler* v. *M. E. R. Co.*, 138 N. Y. 178 ; *Bernheimer* v. *N. Y. R. R. Co.*, 26 Abb. [N. C.] 88 ; *Storck* v. *M. E. R. Co.*, 131 N. Y. 516 ; *Powers* v. *B. E. R. R. Co.*, 157 N. Y. 105 ; *Herold* v. *M. E. R. Co.*, 37 N. Y. S. R. 896 ; *Cohn* v. *M. E. R. Co.*, 136 N. Y. 646 ; *Skelly* v. *N. Y. E. R. R. Co.*, 7 Misc. Rep. 88.) It was error to strike out testimony as to rentals received for houses in the immediate vicinity of plaintiff's property. (*Doyle* v. *M. R. Co.*, 128 N. Y. 495 ; *Roberts* v. *N. Y. E. R. R. Co.*, 128 N. Y. 455.)

*Arthur O. Townsend, Julien T. Davies, J. Osgood Nichols* and *Charles A. Gardiner* for respondents. The decision rendered was on the merits, and the judgment in accordance therewith is correct. (*McCready* v. *M. E. R. Co.*, 76 Hun, 531 ; *Storm* v. *N. Y. E. R. Co.*, 82 Hun, 11 ; *Lazarus* v. *M. E. R. Co.*, 69 Hun, 190 ; *Sutro* v. *M. R. Co.*, 137 N. Y. 592 ; *Jamieson* v. *K. C. E. R. Co.*, 147 N. Y. 322 ; *Crampton* v. *B. E. R. R. Co.*, 3 App. Div. 265 ; *Schofield* v. *Hernandez*, 47 N. Y. 313 ; *Place* v. *Hayward*, 117 N. Y. 492 ; *Forbes* v. *Chichester*, 125 N. Y. 769 ; *Cowen* v. *Paddock*, 137 N. Y. 188.) The facts as found by the learned trial justice and approved by the General Term must be deemed to be conclusively established upon any review of the judgment in this court. (*Cox* v. *Stokes*, 156 N. Y. 504 ; *White* v. *Benjamin*, 150 N. Y. 258 ; *Crim* v. *Starkweather*, 136 N. Y. 635 ; *West* v. *Van Tuyl*, 119 N. Y. 620 ; *Musgrave* v. *Buckley*, 114 N. Y. 506 ; *Mooney* v. *Loughlin*, 1 Silver. 465 ; *Ensign* v. *Ensign*, 120 N. Y. 655 ; *People* v. *Cignarale*, 110 N. Y. 26 ; *Matter of Cottrell*, 95 N. Y. 329 ; *People* v. *Stone*, 117 N. Y. 480.) The findings of the Special Term and the undisputed evidence necessitate

the conclusion that no fee damage was sustained by the plaintiff. (*Crampton* v. *B. E. R. R. Co.*, 3 App. Div. 265; *Sutro* v. *M. R. Co.*, 137 N. Y. 592; *Jamieson* v. *K. C. E. R. Co.*, 147 N. Y. 322.) There is abundant proof to support the finding of the court that the defendants' structure was built with legislative and municipal consent. (*Matter of G. E. R. Co.*, 70 N. Y. 361; *Matter of N. Y. E. R. R. Co.*, 70 N. Y. 327; *People* v. *Herkimer*, 4 Cow. 345.) The court will take judicial notice that the elevated railways increase traffic and business in the avenues. (*Bookman* v. *N. Y. E. R. R. Co.*, 137 N. Y. 302; *Saxton* v. *N. Y. E. R. R. Co.*, 139 N. Y. 320; *Newman* v. *M. E. R. Co.*, 118 N. Y. 628; *Beck* v. *Sheldon*, 48 N. Y. 365; *Day* v. *Mooney*, 6 T. & C. 382.)

Vann, J. This is the usual action by the owner of land abutting upon a public street occupied in part by the structure of an elevated railroad company.

The defendants' road, commenced in December, 1877, and completed in June, 1878, extends through Sixth avenue, in the city of New York, past the lands of the plaintiff on the southeast corner of said avenue and 40th street, with a frontage of 59 feet and 6 inches on the former and 100 feet on the latter, and until recently occupied by a building several stories high, known as the Hotel Royal.

The trial court found that the plaintiff had the usual easement in the avenue for the purpose of light, air and access, and that the defendants' double tracks rest upon a framework supported by two parallel rows of iron columns about 21 feet high, 42 feet apart longitudinally and 21 transversely. Four of the columns are opposite the plaintiff's premises, each twelve inches square and set in a base which projects about two feet above the surface of the avenue. The structure is 30 feet 4 inches wide and at the nearest point comes within 30 feet 6 inches of plaintiff's building. The upper surface is covered with planking which partially excludes the light from the street below. The operation of the road occasionally

causes cinders to fall upon the awnings, fly though the windows into the lace curtains and onto the carpets in the hotel.   When the wind is right smoke with an offensive smell enters the rooms, and when there is no wind hangs around the building and discolors it.   The passing trains partially obstruct the view from the windows and prevent the light from reaching the hotel.   Before the road was built rooms fronting on the avenue were more desirable than those at the rear, but after it was built guests frequently requested that their rooms be changed from the front to the rear.   According to the uncontradicted evidence, at the time of the trial the fair value of plaintiff's land without the building was from $95,000 to $100,000.

Upon the request of the plaintiff the trial court found that the value of his land alone, without the building, in the year 1872, was $125,000; that the value of land declined in the city of New York between 1872 and the fall of 1877, when values on the abutting streets in the neighborhood of the plaintiff's premises began to advance, and have continued to advance to the present time; that between the fall of 1877 and the time of the trial the value of the plaintiff's lands did not improve equally in comparison with that of lands on the abutting streets in plaintiff's neighborhood, and on Seventh avenue and Broadway; that after the defendants' road was built on Sixth avenue there was a very material fall in the rentals of some houses thereon, which had theretofore, and in 1877, begun to advance; that between 1877 and 1880 the decline in rental values of property on Sixth avenue, in the neighborhood of said premises, was at the rate of from 30 to 40 per cent in addition to the fall that had previously taken place; that there has been no substantial increase in the rental value of property on Sixth avenue, in the neighborhood of plaintiff's premises, from the time the railroad began to operate up to the present, and that the demand for houses on said avenue, between 38th and 42nd streets, has been less than it was before the road was built, while the vacancies have been materially more; that the rental of some houses on Sixth ave-

nue, between 38th and 42nd streets, has not recovered from
the depreciation suffered since the construction of the road,
while the rents on the side streets abutting on the avenue and
on Broadway, in this neighborhood, are higher now than they
were in 1877; that the rents on said abutting streets are in
some cases one-third higher than they were in 1877, while the
fee value has increased about one hundred per cent. These
findings, with others of like nature, showed a substantial and
continuing injury to both the fee and rental value of plaintiff's
property, which would sustain a suit in equity in order to
avoid a multiplicity of actions for the constant trespass.

Although the defendants introduced no evidence, the trial
judge found, upon their request, that the existence and opera-
tion of the road, together with the station at 42nd street, have
rendered plaintiff's premises more accessible, and that the
increase of accessibility has been a benefit thereto, and has
increased the value thereof; that real estate upon Sixth ave-
nue, below 42nd street, has largely increased in value since
the road was built; that the value of plaintiff's property has
largely increased since the defendants' road was built and put
in operation; that this rise in value of real estate, including
the plaintiff's property, is in large measure due to the building
and operation of the defendants' road in Sixth avenue; that
the premises in question would not be worth as much as they
now are if the road in Sixth avenue and the station at 42nd
street were removed; that said premises would not be worth
as much as they now are if said road and station had not been
built; that no decrease of the fee value of the plaintiff's
premises has taken place in consequence of the construction,
maintenance and operation of defendants' road in front
thereof; that said road and its operation has not prevented an
enhancement of the value of plaintiff's premises greater than
that which has actually occurred; that the plaintiff's premises
were leased from July 21st, 1874, for ten years at $18,000 a
year, but such rent was exorbitant and the tenants unable to
pay it, and the lessors voluntarily reduced it to $15,000 from
May 1st, 1876 to May 1st, 1878, and to $10,000 from May

1st, 1878 to May 1st, 1879; that the original lessee and the assignee of said lease failed in the hotel business on said premises under that lease; that since the defendants' road was built and operated said premises have been leased at the following annual rentals: 1879 to 1880, $10,000; 1880 to 1883, $11,000; 1883 to 1887, $11,300; 1887 to 1892, $14,000; that since the defendants' road was put in operation a number of new and large hotels with improved modern conveniences have been built in the vicinity and this has affected the rental value of plaintiff's property for hotel purposes; that no decrease of the rental value of the premises in question has taken place in consequence of the construction, maintenance or operation of defendants' road in Sixth avenue in front thereof, and that said road and its operation has not prevented an enhancement of the rental value of plaintiff's premises greater than that which has actually occurred.

While an appellate court should harmonize inconsistent findings when it is possible to do so, if they prove irreconcilable it is the duty of the court to accept those most favorable to the appellant, as he is entitled to rely upon them in aid of his exceptions. (*Schwinger* v. *Raymond*, 83 N. Y. 192; *Bonnell* v. *Griswold*, 89 N. Y. 122, 127; *Bennett* v. *Bates*, 94 N. Y. 354, 367; *Health Department* v. *Purdon*, 99 N. Y. 237, 243.)

According to the uncontradicted evidence and the findings made upon the request of the plaintiff, his property was worth much less at the time of the trial than it was in 1872, twenty years before, and it rented for $4,000 less per year than in 1874, eighteen years before. The general decline in values, owing to the panic of 1873, ended in the fall of 1877 when the building of defendants' road began, yet fifteen years later the land in question was worth materially less than it was before the panic, although property on the side streets and parallel avenues had not only regained, but had gone beyond, its ante-panic value. From 1877 until 1892 the land of the plaintiff did not keep up with that in its immediate neighborhood off of the avenue. Since the beginning of construction the increase on side streets has been large, while values on

Sixth avenue have remained comparatively stationary, yet the locality was built up before the road was constructed. From 1874 until May, 1876, the rent reserved and actually paid was $18,000, and after that until May, 1878, it was $15,000, but was then reduced to $12,000 and finally to $10,000, at which rate it continued until October, 1880, when it was increased to $11,000, and during the twelve years following it increased only to $14,000. There has been no increase whatever since the beginning of the construction of the road. On the other hand there was a continuous decrease for awhile, then a moderate increase, but even the panic price has never been regained. During the period while the road was in the process of construction the rents actually paid fell from $15,000 to $10,000. The rent never went as high after the road was built by $4,000 as it was before the road was built, although rents on the side streets rapidly increased. The lack of growth, both in rental and fee values, was confined to lands on the avenue and no adequate explanation of the fact appears except the presence of the defendants' heavy structure and the running of many trains thereon. When land with such a structure, used for such a purpose, in front of it, falls below its ante-panic value, and the rents fall below even their panic value, and both fail to make up the loss as the years pass by, while property on abutting streets in the immediate neighborhood, with no railroad in front of it, advances rapidly both in fee and rental values, in the absence of any explanation the inference is irresistible that the presence and operation of the road kept the values of the abutting property down. (*McGean* v. *Manhattan R. Co.*, 117 N. Y. 219, 225; *Becker* v. *Metropolitan El. R. Co.*, 131 N. Y. 509, 511; *Bookman* v. *New York El. R. R. Co.*, 147 N. Y. 298.) This is not a case simply of comparative increase, or where the locality was not built up before the road came, or where an improper measure of damages was adopted, but where no damages were allowed although the uncontradicted evidence proved substantial damages and facts were found showing substantial damages.

We are unable to reconcile the findings favorable to the

plaintiff with those made at the request of the defendants, nor are we able to find in the record any evidence to justify the finding that the plaintiff's premises have been materially benefited by the construction and operation of the road. As the appeal is from a judgment of the General Term, the unanimous affirmance by that court does not have the effect of a unanimous affirmance by an Appellate Division, and hence a finding made without evidence to sustain it is a ruling upon a question of law, which, when duly excepted to, it is our duty to review. (*Halpin* v. *Phenix Ins. Co.*, 118 N. Y. 165.) The existence of a station at the corner of Sixth avenue and 42nd street, although assumed rather than proved, is the main reliance of the respondents to support the findings relating to benefits. There was no evidence, however, that people in large or in small numbers used that station or that any more people passed by or patronized the property of the plaintiff, two blocks away, after the construction of the road and the building of the station than before, or that the station was of any special benefit. The existence of peculiar benefits cannot be presumed, but must be proved. The presence of a station two blocks away is not necessarily a benefit, and the defendants should have shown the facts, if they exist, from which the inference of benefit could reasonably have been drawn. Even if we assume that the tendency of elevated railroad stations is to increase business in the immediate vicinity, we cannot assume that the effect of this station was to increase the business carried on in the plaintiff's building. Upon the new trial, which we think it is our duty to grant, the investigation can be more thorough and the defendants can introduce such evidence upon the subject of benefits as they are able to procure. When the inconsistent findings, as well as those made without the support of evidence, are disregarded, there is nothing to sustain the judgment appealed from which dismissed the complaint upon the merits. This conclusion makes it unnecessary for us to consider the questions, so elaborately argued by counsel, whether the dismissal of the complaint, although in form upon the merits, was in fact a nonsuit, or

whether the absence of evidence that the defendants' structure was built with legislative or municipal consent, left it a nuisance entitling the plaintiff to relief, as those questions will not be apt to arise upon the new trial.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except O'BRIEN, J., dissenting.

Judgment reversed, etc.