The objection was sustained. This ruling of the court, I think, was error. The witness had shown himself competent to answer the question asked. Ordinarily, perhaps, this error would not be sufficient to warrant the reversal of a judgment; but in this case it is evident that the question turned upon the reputation of the defendant, and of the witness Orford, for truth and veracity; because, if their story is to be believed, the referee could not have found the finding of fact that he has, and thus it becomes a matter of importance to show that the witness Orford was a reputable man, and worthy of belief. The error in rejecting the evidence offered was not a slight one, but one which might well affect the result of the case. Without, therefore, reviewing the testimony, or giving my impressions as to the facts in this case, which might perhaps have undue weight on a new trial, I think, under the circumstances, for the error referred to the judgment should be reversed, and a new trial granted.

Judgment reversed, referee discharged, and new trial ordered; costs to abide the event. All concur.

(43 App. Div. 203.)

SYRACUSE SOLAR-SALT CO. v. ROME, W. & O. R. CO.

(Supreme Court, Appellate Division, Third Department. September 6, 1899.)

1. DAMAGES—REMOTE OR SPECULATIVE—OPERATION OF RAILROAD.
   Where the evidence and findings show that defendant, while running its trains and locomotives over a street opposite plaintiff's salt vats, unlawfully cast over and on plaintiff's land and salt vats great quantities of dirt, dust, and cinders, whereby the amount of salt produced by plaintiff was lessened in quantity, deteriorated in quality, and diminished in value, the damages are not too remote or speculative to justify a recovery.

2. RAILROADS—INJURY TO ADJOINING LAND.
   The statutory power to construct and operate a railroad does not authorize such a construction and operation thereof, even on the corporation's own land, as will seriously impair the enjoyment of the adjoining land.

3. SAME—LIABILITY FOR INJURY TO ADJOINING LAND.
   A material interference by a railroad corporation, in the operation of its road, with adjoining land, by casting soot, cinders, dirt, and dust on it, and on salt vats situated thereon, entitles the owner to compensation.

Appeal from special term, Onondaga county.

Action by the Syracuse Solar-Salt Company against the Rome, Watertown & Ogdensburgh Railroad Company. There was a judgment for plaintiff, and defendant appeals. Modified.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

William G. Tracy (William B. Hornblower, of counsel), for appellant.

Knapp, Nottingham & Andrews (C. W. Andrews, of counsel), for respondent.

HERRICK, J. This case has been twice before the court upon appeal, and the decision thereon will be found in 67 Hun, 153, 22 N. Y. Supp. 321, and 11 App. Div. 557, 42 N. Y. Supp. 590. The facts appearing now are substantially the same as they appeared upon such

appeals, and are so fully stated there that it is unnecessary to repeat them here.   Upon both former appeals it has been held that the facts alleged and proved by the plaintiff constituted a cause of action against the defendant, and the trial now to be reviewed was had pursuant to the rulings upon such former appeals, and I think the orderly administration of justice requires that we should follow them upon this appeal.   That determination eliminates from our consideration many of the questions discussed by counsel in their briefs.

The question of fact as to whether the plaintiff owned to the counter line of Marsh street, subject to the public easement, has been, upon conflicting evidence, found in favor of the plaintiff, as it had been upon the last appeal, and I do not think the evidence justifies us in reversing that finding.   Adhering, then, to the finding upon that question of fact, and to the prior decisions made in this case upon the questions of law, practically the only questions left for us to consider relate to the damages awarded.   Upon the former trial, the grounds stated in the findings of fact as to damages were:

"(1) Interference. with the plaintiff's business; (2) deterioration in value of the salt manufactured; (3) injury to the salt vats; (4) decrease in the amount of salt manufactured; (5) expense incurred to prevent other extensive injury; (6) damages by reason of obstruction of access to the plaintiff's premises; (7) the lessening of the selling value of the plaintiff's property."

See 11 App. Div. 562, 42 N. Y. Supp. 593.

Upon that trial, the court found a gross amount for past damages, without specifying the amount of damage sustained by the plaintiff upon each of the several grounds stated.   Upon reviewing that trial, the court said:

"Inasmuch as the damages are massed together in one gross finding, it is not possible for this court to determine what was allowed by the trial court upon any one of the numerous grounds specified in the finding of fact on the subject of damages. * * * (a) Upon looking into the evidence, we are not satisfied that any considerable sum. should have been allowed because. access to its premises had been obstructed.   At all times the plaintiff has been enjoying access to its premises, and has used them for the same purpose that it did before the road was there, and it is difficult to discover any considerable, if any, damages sustained by reason of the interference with the plaintiff's access to its premises.   (b) Nor does the evidence reveal any satisfactory ground to say that 'the selling value thereof' has been diminished. * * * As already stated, after the amount of damages was stated in the finding, the conclusion follows that the aggregate of the damages so suffered by the plaintiff amounts to the sum of $18,568.   In order to sustain that conclusion, we must necessarily adopt all the grounds specified as a foundation for awarding damages."

According to the evidence, the plaintiff was in the occupation, under a lease, of about 15 acres of land adjacent to the 34 acres owned by it.   Its rights to the 15 acres in question only extended to the margin of the street, and it appeared, in awarding damages for the injury to the business carried on by the plaintiff, that it was not manifest from the findings what damages were allowed for the injury to the business of the plaintiff occasioned by reason of the presence of defendant's tracks in the street opposite to the 15 acres; and the court at that time was of the opinion that, under the doctrine laid down in Fobes v. Railroad Co., 121 N. Y. 505, 24 N. E. 919, the plain-

tiff was not entitled to recover damages for injury to its business occasioned by reason of the presence of defendant's tracks in the street opposite to the 15 acres, and that the finding did not leave it clear and certain that such injury had been excluded in making the award of damages. Upon this trial the court confined the injury to the plaintiff's business to that done upon the 35 acres of land owned by it, and also to the injury to the crop of salt, and the expenses that the plaintiff was put to in employing men "for the purpose of screening all the dirt, soot, and cinders thrown by the defendant during the trespasses above mentioned, and while in the occupancy of Marsh street as aforesaid, over and upon the plaintiff's salt vats situated upon the 35 acres above mentioned." Such expense was placed at $300 a year, for 10 years; being, in all, the sum of $3,000. And the injury to the salt crop during the same time was adjudged to be the sum of $9,000.

It will thus be seen that all the objections raised by the court to the recovery of damages upon the last appeal have been eliminated from the case as now presented, except whether the damages allowed for the loss or injury to the plaintiff's business were not too remote. Upon the last appeal the court made use of the following language:

"Nor is it made apparent that the damages allowed for the loss or injury to the plaintiff's business were not too remote, and such as ought to have been excluded, according to the rule laid down in Taylor v. Railway Co., 50 N. Y. Super. Ct. 312."

There is evidence in the case to show, and the trial court has found, that:

"The defendant has unlawfully cast over and upon the 35 acres of land owned by the plaintiff, and upon its salt vats, great quantities of dirt, dust, and cinders, by reason whereby the amount of 'Diamond C Salt' produced by the plaintiff has been lessened in quantity, deteriorated in quality, and its market value diminished. The damages and loss caused by defendant to the plaintiff thereby have amounted, since 1882, to the sum of $9,000."

The evidence, together with this finding, shows direct and positive, and not remote or speculative, injury and damage to the plaintiff by reason of the running of the defendant's trains and locomotives opposite plaintiff's salt vats, and I do not think damages can be withheld from the plaintiff because of their being remote or speculative; the injuries complained of seem to be the direct consequence of the defendant's acts.

There is another objection made to the recovery of past damages which requires consideration. It appears that the line of the West Shore Railroad also runs adjacent to a portion of the plaintiff's premises, and some dust, soot, and cinders have been cast upon the plaintiff's premises and salt vats from that road. In estimating the damages suffered by the plaintiff, the court excluded therefrom the amount thereof assumed to have been caused by the operation of the West Shore Railroad, and it is contended that it should also have excluded the damages resulting from the operation of the defendant's road over its own property to the south of the plaintiff's land (and purchased from the plaintiff by defendant's predecessors), and also on the opposite side of the street. As will be seen from the statement of facts

in the last appeal, the defendant's main line extends about two feet to the west of the center line of Marsh street. On the east side of the street, and opposite the salt vats of the plaintiff, the defendant has a freight yard, and switches running from the main tracks into the freight yard. These switches are entirely on the east side of the street, and, together with the freight yard itself, on the defendant's own property. The appellant, in its brief, after reciting some of the testimony, asserts as follows:

"It clearly appears from this testimony that the principal damages to the plaintiff's salt and to the plaintiff's property must have been caused by the use of the freight yard and switches, which defendant had a perfect legal right to use, and as to which defendant was not a trespasser upon the plaintiff's lands, and as to which plaintiff has no right of recovery unless the operation of the trains is carried on so negligently as to amount to a nuisance."

And it is contended on behalf of the appellant that within the principle of the case of Fobes v. Railroad Co., 121 N. Y. 505, 24 N. E. 919, the plaintiff is not entitled to recover for such damages, and that they should have been excluded from the award made by the trial court. The syllabus of that case is in part as follows:

"A duly incorporated railroad company, having authority from the state to lay its tracks and operate its road through and upon the surface of a city street, under the protection of a license from the city, in doing this takes no property of one who owns land adjoining the street, but bounded by its exterior line. The company, therefore, is not liable to such owner for any consequential damages to his adjoining property, arising from a reasonable use of the street for railroad purposes, without substantially changing its grade, and which is not exclusive in its nature, but leaves the passage across and through the street free and unobstructed for the public use."

This is a very broad statement of the rule, and must be taken with some qualifications and limitations, and one, at least, is found in the opinion of the court itself in that case. At page 515, 121 N. Y., and page 921, 24 N. E., the court says:

"If the adjoining owner of land is not the owner in fee of the street, and the railroad company has obtained the proper authority, he has no right to compensation for such added burden, nor to complain of such use, so long as it is not exclusive or excessive."

The legislature may undoubtedly authorize, and the municipality license, the use of streets and highways to a quasi public corporation, and the incidental inconvenience and injury inflicted upon adjoining property owners must, where they are trivial and inconsequent in their nature, be suffered without compensation. "The legislature may authorize small nuisances without compensation, but not great ones." Bacon v. City of Boston, 154 Mass. 102, 28 N. E. 10. But where the interference is something more than a mere inconvenience, and the resulting injury is more than trivial, and, as expressed in the Fobes Case, is excessive, then the adjoining property owner has a right to complain.

Upon the former trial, the court found that the past damages suffered by the plaintiff amounted to the sum of $18,568. Upon the trial now under review, the court found that the damages suffered by the plaintiff to its business alone amounted to the sum of $9,000, and the

additional expense in taking care of its vats to the sum of $3,000. The use which causes damage to such an extent, it seems to me, rises above a mere inconvenience, and is something that is not trivial, and may fairly be said to be a use that is excessive. The fact that the freight yard, and the switches to it, were both located upon the defendant's own property, and that switches and a freight yard are a necessary part and factor in the operation of defendant's road, does not relieve it from responsibility for any resulting injury to adjacent property owners. The fact that it was authorized by the statute and by the municipal authorities to run its road over Marsh street, and that it was necessary to have a freight yard, did not necessarily authorize it to erect that freight yard and construct its switches opposite the plaintiff's salt vats, and thereby work injury and damage to the plaintiff's business, without compensating it for such damage. "The acts that a legislature may authorize, which, without such authorization, would constitute nuisances, are those which affect public highways or public streams, or matters in which the public have an interest, and over which the public have control. The legislative authorization exempts from liability to suits, civil or criminal, at the instance of the state, but does not affect any claim of a private citizen for damages for any special inconvenience and discomfort not experienced by the public at large." Baltimore & P. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 332, 2 Sup. Ct. 719, 729. The statutory power to construct and operate a railroad does not authorize such a construction and operation thereof, even upon the railroad corporation's own land, as will seriously impair the enjoyment of the adjoining land. Such a user constitutes an easement upon such adjoining land, and is, in effect, taking property belonging to the adjoining proprietor, for which he is entitled to compensation. Garvey v. Railroad Co., 159 N. Y. 323, 54 N. E. 57; Railroad Co. v. Garvey, 159 N. Y. 334, 54 N. E. 60. The plaintiff's property is located where one of the principal industries is the manufacture of salt, and this specific property is so situated, and is of such a character, as to be peculiarly adapted to that purpose; but, whether so or not, the plaintiff's right to use its own real estate for the carrying on of any legitimate business, which is not harmful to others, is of itself property, and any material interference with its enjoyment of that right is a taking of such property. The right of interference with the plaintiff's property by casting soot, cinders, dirt, and dust upon it, and upon its vats, would constitute an easement upon plaintiff's land, for which the plaintiff would be entitled to compensation. Railroad Co. v. Garvey, 159 N. Y. 334–338, 54 N. E. 60.

Assuming that the defendant has done no more than it was necessary for it to do in the ordinary running and operation of its road, and assuming, also, that the trial court has correctly found the amount of damage sustained by the plaintiff by reason of the operation of the defendant's road, then the plaintiff has been forced to contribute over $1,000 a year to enable the defendant to maintain and operate its road through the street in question. "Obviously, the general doctrine which levies upon individuals forced contributions for the benefit of the public, and denies compensation for the injury done, is

vulnerable at two points. It is defeated sometimes by construing the harm inflicted into a taking of private property, for which compensation must be made, and sometimes by a rigid construction of the authority claimed." Hill v. City of New York, 139 N. Y. 495, 505, 34 N. E. 1090, 1093. This very material interference with, and damage to, the plaintiff's business, is, in effect, a taking of its property, for which it is entitled to compensation. The damage that it sustained was a forced contribution to the operation of defendant's road, which it is entitled to recover back. I am therefore of the opinion that the finding of the trial court as to past damages should not be disturbed.

The trial court found "that, should the said trespass of the defendant continue in the future, the value of the plaintiff's property will be diminished in the sum of $13,500." I am not clear as to the correctness of that finding; but the view that I have arrived at, as to what the judgment should be in this case, renders it unnecessary to discuss that finding. The judgment appealed from restrains the defendant from operating its railroad on the land owned by the plaintiff on Marsh street, unless within the period of four months it pays to the plaintiff the sum of $13,500; and, in case the defendant make such payment, the plaintiff thereupon, at the request of the defendant, shall execute and deliver to the defendant a deed releasing the interest of the plaintiff in said street. With the view that I have taken of this case, the delivery of a deed of the plaintiff's interest in Marsh street would not be sufficient protection to the defendant against actions brought by it for injury to the plaintiff's property because of the soot, dust, and cinders cast upon it through the operation of the defendant's railroad. If the defendant's road cannot be operated without this casting of soot, dust, and cinders upon the plaintiff's property, then it is just as necessary for it to secure an easement for that right as it is to procure plaintiff's title to the street upon which defendant's tracks are laid; one is of just as much importance as the other. If the defendant elects to pay the sum of $13,500, then the plaintiff should execute and deliver to it, not only a deed of its interest in said street, but also convey to it an easement for the purposes aforesaid, and the judgment herein should be modified accordingly. The judgment should also be further modified so as to enable the defendant, at its election, to commence condemnation proceedings to acquire the plaintiff's interest in said street, and the necessary easement to operate its road, instead of paying the sum of $13,500 adjudged as future damages.

The judgment, as so modified, should be affirmed, with costs. All concur; PUTNAM, J., in result.