Janet Franchot Paige, Respondent, v. Schenectady Railway Company, Appellant.

Caroline Paige Lansing, Respondent, v. Schenectady Railway Company, Appellant.

Belle Van Epps, Respondent, v. Schenectady Railway Company, Appellant.

Isabella Beattie, Respondent, v. Schenectady Railway Company, Appellant.

Louise A. Thompson, Respondent, v. Schenectady Railway Company, Appellant.

Charles L. Whitmyre, Respondent, v. Schenectady Railway Company, Appellant.

1. Highways — Rights in Streets Not in Existence in 1664 Determined by English, Not by Dutch Law. A finding by the trial court, upon evidence sufficient to justify it, that a street was not in existence as a public highway prior to 1664, the date of the capitulation by the Dutch to the English, conclusively disposes of a contention. that it was a Dutch street to which the Dutch law applied and placed the title of the street in the public and not in the abutting owner.

2. Abutting Owners Presumed to Own the Fee to the Center of the Street. A conveyance by a municipality of land described as abutting upon a public street without any reservation or declaration of intention not to convey to the center, is presumed to carry the title to the center of the street, subject to the public right of way over it. (*Graham* v. *Stern*, 168 N. Y. 517, where the conveyance was from the city of New York, which owned the fee of the street, was in possession thereof and held the title thereto in trust for street purposes, distinguished.)

3. Use of Street by Electric Street Railway. The use of a city street for the purposes of a street surface railroad operated by electric power imposes an added burden upon the property rights of the owners in fee of the street, and they are entitled to restrain the operation of the road over their premises unless they consented thereto.

4. Consents of Abutting Owners to Construction of Railway Create Property Rights Which Cannot Be Abandoned Except by Action of All Parties Interested. Valid consents given by the owners of the fee in a public street to the construction and operation of a street railway over their premises cannot be withdrawn at will where there is no contract with the company to that effect, no consent by the state or general public or by the stockholders of the company, and no

consideration therefor.   Nor can the rights acquired under such consents
be destroyed by the action of a receiver of the company appointed in
foreclosure proceedings, under an order limiting his authority to the
management, operation and protection of its property, in abandoning
that portion of the road to which such consents attached.   Nor has the
city any power to authorize such abandonment.   Such consents create
property rights which cannot be abandoned without the consent of the
state, the company and its stockholders and which, surviving reorganiza-
tion, pass to the company's successor in title.   Consenting owners, there-
fore, are not entitled to an injunction restraining the operation of the road
upon the ground that the rights acquired under their consents have been
abandoned by the receiver.

5. SAME.   The fact that the successor company attempted to obtain
the consent of the abutting owners to a reconstruction of that part of its
railway abandoned by the receiver of its predecessor, and having failed
to do so received the approval of the route by the Appellate Division,
in no way forfeited or impaired its rights acquired under the original
consents; assuming that the proceeding was unnecessary it was at
most by way of further assurance and not destructive of the rights already
acquired.

6. WHEN NON-CONSENTING OWNER ENTITLED TO AN INJUNCTION
RESTRAINING OPERATION OF ROAD.   Where a strip of land outside of the
original street was acquired by the city under condemnation proceedings
and the street was widened, an abutting owner who owned the fee to the
center still holds the fee to some portion of the land lying between
the center of the street and the former boundary thereof, and where such
owner did not consent to the construction of the railway over his
premises, he is entitled to an injunction restraining the operation of the
road over that portion although its value can be little more than nominal.

*Paige* v. *Schenectady Ry. Co.*, 84 App. Div. 91, reversed.

*Lansing* v. *Schenectady Ry. Co.*, 84 App. Div. 91, affirmed.

*Van Epps* v. *Schenectady Ry. Co.*, 84 App. Div. 91, affirmed.

*Beattie* v. *Schenectady Ry. Co.*, 84 App. Div. 91, affirmed.

*Thompson* v. *Schenectady Ry. Co.*, 84 App. Div. 91, reversed.

*Whitmyre* v. *Schenectady Ry. Co.*, 84 App. Div. 91, reversed.

(Argued February 18, 1904; decided March 15, 1904.)

APPEAL in each of the above-entitled actions from a judg-
ment of the Appellate Division of the Supreme Court in the
third judicial department, entered May 11, 1903, which
affirmed a judgment of Special Term enjoining the defendant
from operating its railway upon any part of Washington
avenue in front of the premises of each of such plaintiffs.

The trial judge made a short decision in each action, and also

made findings of fact and directed the same to be attached to the decision therein.

The Schenectady Street Railway Company, the predecessor of the defendant, obtained the consent of the local authorities of the city of Schenectady and the consent of the necessary number of abutting owners, to the construction of a street railway in Washington avenue in that city. The plaintiffs Paige, Whitmyre and the predecessor in title of the plaintiff Thompson were among the property owners who consented to its construction. In September, 1891, after the railway on Washington avenue had been completed and was in operation, the company executed a mortgage upon its property and franchises, including the Washington avenue portion of its road, to the Central Trust Company of the city of New York.

In August, 1893, Corra N. Williams, a stockholder and bondholder of the street railway company, brought an action in the United States Circuit Court on behalf of himself and all other creditors of said company, alleging its insolvency, and asked, among other things, that a receiver of the property of the railway company be appointed. Subsequently John Muir was, in that action, appointed receiver of all the property of the company, and duly qualified as such.

In the following December, while the property was in the possession of such receiver, the Central Trust Company brought an action in the same court to foreclose the mortgage upon the property and franchises of said railway company. In that action George W. Jones was appointed receiver of its property on June 19, 1894, by an order which also provided that Muir, the receiver in the Williams suit, should turn over the property to Jones, and it directed him "to manage and operate the said railway and property, and to exercise the (and) franchises of the said company, and to discharge the public duties, and to preserve and protect the said property in proper condition and repair so that it may be safely and advantageously used, and to protect the title and possession, and to secure and protect the business of the same."

On or about October 2, 1894, D. Cady Smith and nineteen others, owners of property on Washington avenue, presented a petition to the common council of the city of Schenectady, asking the consent of that body to the abandonment of the street railway on a portion of Washington avenue. A similar petition was presented on behalf of Jones as receiver of the railway company in the foreclosure suit. The common council thereupon adopted a resolution authorizing Jones as such receiver to dispense permanently with the operation of its road between Church street and the Mohawk bridge. After the adoption of such resolution and with the consent of twenty abutting owners, Jones took up the rails on a portion of Washington avenue and restored the pavement. There seems to be no evidence in the case that he obtained authority to abandon the road from the court which appointed him, from the railroad commissioners, or from the State. Nor does the proof disclose that he obtained the consent of the Schenectady Street Railway Company, or its stockholders or bondholders, or of the trustee under the mortgage. On September 1, 1894, a decree of foreclosure and sale was entered, and pursuant to that decree the property mentioned therein, which included the Washington avenue railway and franchise, was sold to one Kobbe and two others. This sale was confirmed by a decree of the court February 8, 1895, and a deed thereof was executed and delivered to them by the special master appointed to make such sale on or about February 9, 1895. Kobbe and the other purchasers also received deeds of such property, rights and franchises from the Schenectady Street Railway Company and from George W. Jones. On February 14, 1895, Kobbe and the other purchasers conveyed the mortgaged property to the present defendant, which was incorporated on that day. The complaint in the foreclosure action, the decree of foreclosure and sale and each of the foregoing deeds specifically described the franchise to maintain a railroad on Washington avenue.

In 1901, the present defendant, claiming that the alleged abandonment of the railway by the receiver was ineffective,

and also claiming a right under original proceedings instituted by it, independent of any right acquired from the Schenectady Street Railway Company, attempted to relay the tracks on Washington avenue, whereupon the present actions were brought. In each of the conveyances for the six lots owned by the plaintiffs, the description of the lots bounded them upon the street. The defendant's railway is "in part on the half of the street towards the plaintiffs in all cases." On the trial it was stipulated that the plaintiffs had been in possession under their respective conveyances of the premises abutting on Washington avenue for twenty-nine years. Upon the evidence and stipulation, it is claimed by each of the plaintiffs that he or she owns the portion of Washington avenue in front of his or her premises, to the center of the street. The defendant, however, sought to show that Washington avenue was in existence prior to August 27, 1664, and, hence, that it was originally a Dutch street, to which the Dutch law was applicable.

*Marcus T. Hun* and *James A. Van Voast* for appellant. The title to the fee of the street does not belong to any of the plaintiffs in these actions, but to the city of Schenectady. (*Graham* v. *Stern*, 168 N. Y. 517.) A consent, once given, having been acted upon and the road constructed, cannot be withdrawn. (*White* v. *Manhattan Railway Co.*, 139 N. Y. 19; *Heimburg* v. *M. Ry. Co.*, 162 N. Y. 356; *Bellew* v. *N. Y. & C. T. Co.*, 47 App. Div. 447; *Geneva & W. Ry. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 163 N. Y. 228.) The receiver had no authority to abandon the road. (*C. D. Co.* v. *McNulta*, 153 U. S. 554.) The receiver could act as such only by order of the court. (*C. D. Co.* v. *McNulta*, 153 U. S. 554; *L. C. & N. Co.* v. *C. Ry. Co.*, 35 N. J. Eq. 426; *Q. R. R. Co.* v. *Humphrey*, 145 U. S. 82; *C. T. Co.* v. *W. Ry. Co.*, 23 Fed. Rep. 863; *Vilas* v. *Page*, 106 N. Y. 439; *Howlett* v. *N. Y., W. S. & B. R. Co.*, 24 Abb. Pr. 328.) The consent of the state of New York is essential to the abandonment of a franchise by a railway company. (*People* v.

*O'Brien*, 111 N. Y. 1; *State ex rel.* v. *Frost*, 113 Wis. 625.) The United States Revised Statutes, in effect, forbid a receiver appointed by the United States Circuit Court to abandon any part of a railroad. (1 U. S. R. S. 613; *Erb* v. *Morasch*, 177 U. S. 584; *Barton* v. *Barber*, 104 U. S. 134; *Miltenberger* v. *Logansport R. Co.*, 106 U. S. 286; *U. T. Co.* v. *I. R. Co.*, 117 U. S. 434; *Commonwealth* v. *F. R. R. Co.*, 12 Gray, 188.) A railroad is a public highway and a governmental agency. (*People* v. *Kerr*, 27 N. Y. 188; *Matter of N. F. & W. R. R. Co.*, 108 N. Y. 375; *L. & N. R. R. Co.* v. *Kentucky*, 161 U. S. 696; *Dey* v. *C., etc., Ry. Co.*, 45 Fed. Rep. 82; *Joy* v. *St. Louis*, 138 U. S. 1; *W., etc., R. Co.* v. *Jacobson*, 179 U. S. 287; *U. T. Co.* v. *I. M. R. Co.*, 117 U. S. 434; *Olcott* v. *Supervisors*, 16 Wall. 678; *E. A. R. Co.* v. *Doe*, 114 U. S. 340; *Buncombe Com.* v. *Tommey*, 115 U. S. 122; *N. F. Works* v. *O. W. Co.*, 52 Fed. Rep. 49; *Georgia* v. *A. & G. R. R.*, 3 Wood, 437; *Whiting.* v. *R. Co.*, 25 Wis. 167.) A railroad company which has built its road has no power to abandon any portion thereof without the consent of the state authorities. (*People* v. *A. & V. R. R. Co.*, 24 N. Y. 261; *Matter of M. T. Co.*, 111 N. Y. 588; *Collins* v. *A. S. Ry. Co.*, 76 App. Div. 249; *Goelet* v. *M. T. Co.*, 48 Hun, 520.) The taking up of the tracks on the Washington avenue branch did not extinguish the defendant's franchise. (*Trelford* v. *C. T. & B. R. R. Co.*, 6 App. Div. 204; *Thompson* v. *N. Y. & H. R. R. Co.*, 3 Sandf. Ch. 625.) Van Epps and Whitmyre did not own the bed of the street in front of their houses. (*Potter* v. *Boyce*, 73 App. Div. 383; *Eldridge* v. *City of Binghamton*, 120 N. Y. 309.)

*Douglas Campbell* for respondent. By the common law the sovereign does not own the fee of a highway or of a street. (*Cheney* v. *S. O. & N. Y. R. R. Co.*, 8 App. Div. 620; *Wager* v. *T. U. R. R. Co.*, 25 N. Y. 526; *Cortelyou* v. *Van Brundt*, 1 Johns. 357, 363; *U. S.* v. *Harris*, 1 Sumn. 21; *Harris* v. *Elliott*, 10 Pet. 25.) It is an established principle of the common law that a person in possession of land on the

side of a highway or street is presumed, simply from the fact, to own the fee to the center of the street or highway. That is, the fact of possession by a person of land so situated is evidence of his title to the soil of the highway or street to its center. (3 Kent's Comm. 432; Woolrych on Ways, 8; Egremont on Highways, 22; Bateman's Highway Acts [2d ed.], 67, note; Shelford on Highways [3d ed.], 12; Angell on Highways [3d ed.], § 313; Cook Highway Laws of New York, 354, 357, 358; Thompson on Highways, § 313; *Hochhalter* v. *M. R. Co.*, 31 N. Y. S. R. 112; *Wager* v. *T. U. R. R. Co.*, 25 N. Y. 526; *Cortelyou* v. *Van Brundt*, 1 T. R. 357, 363; *Herring* v. *Fisher*, 1 Sandf. 344; *Banks* v. *Ogden*, 11 Wall. 57.) Each of the patents in question, besides describing the lot conveyed as bounded by the highway, gives a further description, which clearly includes the fee of the street to the center. (*Cheney* v. *S. O. & N. Y. Ry. Co.*, 8 App. Div. 620; *City of Buffalo* v. *Pratt*, 131 N. Y. 293; *S. S. S. Co.* v. *R., W. & O. R. R. Co.*, 11 App. Div. 557; 43 App. Div. 203; 168 N. Y. 517; *Varick* v. *Smith*, 9 Paige, 547; *Oswego* v. *O. C. Co.*, 6 N. Y. 257; *Smith* v. *City of Rochester*, 92 N. Y. 463; *Van Buren* v. *Baker*, 12 N. Y. S. R. 209; *Wright* v. *S. O. & N. R. R. Co.*, 92 Hun, 32.) The city of Schenectady does not own the fee of the street. (L. 1798, ch. 50.) When the defendant took possession of its property on February 17, 1895, it necessarily knew that it had no railroad on Washington avenue, and it knew that fact also during the six years that followed. Here was notice to put it on inquiry as to what had become of the railroad described in its deed. That the defendant considered the act of the receiver and its own inaction as an abandonment of any rights its predecessor may have had on Washington avenue is very clear. (*Williamson* v. *Brown*, 15 N. Y. 354.) The claim of the defendant that the taking of the strip by the city either divested Whitmyre and Van Epps of the fee in the old street bed in front of their lots, on which its cars are now running, or else left them the owners of "islands" in the street, separated from their lots by land belonging to the city is untenable.

(*Fobes* v. *R.*, *W. & O. R. R. Co.*, 121 N. Y. 505; *Banks* v. *Ogden*, 2 Wall. 57.)

MARTIN, J.   Although our decision in the case of *Peck* v. *Schenectady Ry. Co.* (170 N. Y. 298), where we held that the use of a city street for the purposes of a street surface railroad operated by electric power imposes an added burden upon the property rights of the owners of the fee of the street, is in conflict with the rule adopted in most other jurisdictions, yet, as that case was most carefully and thoroughly examined and considered and the conclusion reached that we should adhere to the former decision of this court upon the subject, that decision must now be regarded as final and conclusive, not to be overruled or avoided, even by indirection. Hence it follows that the owners of the fee in Washington avenue are entitled to defend against any improper invasion of or interference with their rights therein, unless they have been surrendered or impaired by some effective act of the plaintiffs or their grantors.

The defendant seeks to attack or impeach the validity of the title of the plaintiffs to the fee of the street on the ground that their premises extend only to the line of the street, and not to the center thereof.   The claims upon which this contention rests are twofold: *First*, that Washington avenue existed anterior to 1664 and was, consequently, a Dutch street, to which the Dutch law applied and placed the title of the street in the public and not in the abutting owner; and, *second*, upon the authority of the case of *Graham* v. *Stern* (168 N. Y. 517), in which this court held that where there was a conveyance of property in the city of New York bounded upon one of its streets, the presumption that the conveyance carried the fee to the center is offset, where the conveyance is by the municipal authorities, by the presumption that the municipality would not part with the ownership and control of a public street once vested in it to be forever held for the benefit of the public.

The first of these grounds is disposed of by the finding of

the trial court which, upon evidence sufficient to justify it, has found that Washington avenue was not in existence as a public highway prior to August 27, 1664, the date of the capitulation by the Dutch to the English. Consequently, under that finding and with our view of the case, it becomes unnecessary to consider much of the historical evidence in these cases which was so thoroughly and exhaustively discussed upon the argument and in the briefs of counsel, as, when in 1664 the English took possession under the charter to the Duke of York, the common law of England followed. (*Mayor, etc., of N. Y.* v. *Hart,* 95 N. Y. 443, 450; *Canal Appraisers* v. *People,* 17 Wend, 571, 583.)

The contention of the defendant upon the second ground is that the title to the property claimed by the plaintiffs passed from the colony of New York or from the local authorities of Schenectady to the predecessors in title of the present owners, after Washington avenue had been opened and while it was used as a public highway, and, hence, that under the principle of the *Graham* case, the presumption is that the public authorities, in making the several conveyances under which the plaintiffs claim, intended to retain the fee of the street and that it should not pass to the grantees under such conveyances. Thus the question at once arises whether the principle of the decision in the *Graham* case has any application to the facts and conditions existing in the cases at bar. Obviously when Washington avenue became a public highway, the colony of New York was governed by the English law, under which the sovereign did not own the fee to the streets or highways, but only an easement upon the land over which they extended. Under the common law of England, the title to the land in a street or highway was not in the king, but in the lord of the manor, subject only to the easement of the public to a way over it. (*Goodtitle* v. *Alker,* 1 Burr. 133, 135.) In this state, as between a grantor and grantee, the conveyance of a lot bounded upon a street carries the land to the center, and there is no distinction, in this respect, between the streets of a city and country highways. The rights of the

public in a street or highway are no higher or other than those of a mere easement, and the proprietors on each side presumptively own the soil in fee to the center thereof. (*Bissell* v. *N. Y. Central R. R. Co.*, 23 N. Y. 61; *Wager* v. *Troy Union R. R. Co.*, 25 N. Y. 526, 529; *White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65, 71; *Potter* v. *Boyce*, 73 App. Div. 383; *Wallace* v. *Fee*, 50 N. Y. 694; *Holloway* v. *Southmayd*, 139 N. Y. 390, 400.)

The same rule applies where the conveyance is from the state or commonwealth and the land is described as abutting upon a street, without any reservation, or declaration of intention not to convey to the center. Such a conveyance, like a conveyance between individuals, is presumed to carry the title to the center of the street, subject to the public right of way over it. This was expressly held in *Cheney* v. *Syracuse, O. & N. Y. R. R. Co.*, in which the opinion at Special Term was written by Judge Vann. That case was affirmed by the Appellate Division (8 App. Div. 620) upon the opinion of the Special Term, and also affirmed by this court (158 N. Y. 739). (*Gere* v. *McChesney*, 84 App. Div. 39; *Syracuse Solar Salt Co.* v. *Rome, W. & O. R. R. Co.*, 43 App. Div. 203; affirmed, 168 N. Y. 650; *Ex parte Jennings*, 6 Cow. 518; *Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178; *Smith* v. *City of Rochester*, 92 N. Y. 463.)

The doctrine of these authorities renders it obvious that the plaintiffs and their grantors, under their deeds describing the property as bounded by the street or way, presumptively took title in fee to the center of the street and must be regarded as the owners thereof. Therefore, under the principle of the *Peck* case, they are entitled to restrain the defendant from operating its road over their premises, unless they consented thereto. The cases at bar are clearly distinguishable from the *Graham* case, as in that case the city of New York was the owner in fee and in possession of the streets and held the title thereto in trust for street purposes.

This brings us to the question of consent, which relates only to the cases of the plaintiffs Paige, Whitmyre and

Thompson, and involves the effect of their consents or the consent of their predecessors in title to the construction of the Schenectady street railway. That they originally consented to the construction of that road is abundantly proved and not denied. But the contention of the plaintiffs named is that the railway was subsequently abandoned, and, therefore, their consents were nullified and have no present effect or operation. The findings of the court upon this question are somewhat conflicting. By its first decision, which is in the short form, it stated as a ground therefor that the defendant was operating its railway upon Washington avenue in front of the premises of the plaintiffs, *without their consent.* In its specific finding it found that the Schenectady Street Railway Company obtained the consent of the plaintiffs Paige, Whitmyre and Charles Thompson, the predecessor in title of the plaintiff Thompson, and that they also consented to the change of motive power from horse power to electricity. In considering this question the findings most favorable to the defendant must be accepted as true. (*Parsons* v. *Parker,* 159 N. Y. 16; *Israel* v. *Manhattan R'way Co.,* 158 N. Y. 624.)

The consents in this case were in writing, under seal, acknowledged by the parties, and were valid grants of the right to build and operate such railway over the street, including the premises of the above-named plaintiffs. Having been once given and the railway having been constructed they cannot be withdrawn and are a bar to these actions so far as the plaintiffs signing such consents are concerned, unless the rights under them which were acquired by the Schenectady Street Railway Company and transferred to the defendant have become invalid. (*Adee* v. *Nassau Electric R. R. Co.,* 65 App. Div. 529; affirmed, 173 N. Y. 580; *Geneva & W. Ry. Co.* v. *N. Y. C. & H. R. R. R. Co.,* 163 N. Y. 228; *Heimburg* v. *Manhattan Ry. Co.,* 162 N. Y. 352.)

The claims of these plaintiffs are that the rights acquired under their consents were abandoned by the act of Jones as receiver in the mortgage foreclosure suit and by the action of the common council of the city of Schenectady in consenting

to the abandonment of the railway upon a portion of Washington avenue, including that in front of their premises. Jones was appointed receiver to manage and operate the railway and property belonging to the Schenectady Street Railway Company, to preserve and protect it in proper condition and repair, and to protect the title and possession thereof and the business of the same. Under this limited authority we can discover no principle upon which the receiver had a right to abandon any of the property belonging to such railway company without the consent of the company, of its stockholders and the consent of the legislature of the state. Nor was the common council clothed with any authority to compel or to authorize an abandonment of any portion of such street railway. While its consent might possibly waive any right the city possessed to enforce or compel the enforcement of a continued operation of the road, still it certainly could not by any action upon its part deprive the railway company of its rights, affect the rights of the stockholders or the rights of the state and general public to require the company to continue the maintenance and operation of its road as originally constructed. These consents vested in the original railway company the right to maintain its road on Washington avenue in front of the plaintiffs' premises, and having been once given and the road constructed they could not be withdrawn at the will of the owner, where, as in this case, there was no contract with the company to that effect, no consent by the state or general public, or by the stockholders of the company, and no consideration therefor. (*Adee* v. *Nassau Electric R. R. Co.*, 65 App. Div. 529; affirmed, 173 N. Y. 580; *White* v. *Manhattan Ry. Co.*, 139 N. Y. 19; *Heimburg* v. *Manhattan Ry. Co.*, 162 N. Y. 352, 356; *Bellew* v. *N. Y., W. & C. Traction Co.*, 47 App. Div. 447.)

The right to maintain this railway upon Washington avenue in front of these plaintiffs' premises passed under the sale in the action of foreclosure, and ultimately vested in the defendant. Under the original consents, the railway com-

8

pany obtained a property right to construct and operate its
road, which could not be destroyed by the action of the
receiver, or of the common council, or by the consent of a
portion of the owners of the land abutting on the street, or
by all.  Moreover, in this case the receiver had no authority
from the court to thus abandon a portion of the road.  He
was required to operate and conduct the business of the road
in accordance with the laws of the state, which gave him no
authority to abandon any portion of the mortgaged property.
(*Erb* v. *Morasch*, 177 U. S. 584.)  His functions were con-
fined to the care and preservation of the property, and his
appointment gave him temporary management of the railroad
under the direction of the court, and nothing more.  He did
not represent the corporation, or supersede it in the exercise
of its powers, except in relation to the possession and manage-
ment of the property committed to his charge.  Notwith-
standing his appointment, the corporation was clothed with
its franchise which still existed.  Such an appointment vested
in the court no absolute control over the property.  The pos-
session taken by the receiver was only that of the court, and
added nothing to the previously existing title of the mort-
gagees.  (*Kneeland* v. *American Loan & Trust Co.*, 136 U.
S. 89; *Fosdick* v. *Schall*, 99 U. S. 235, 251.)  Nor did the
removal of the tracks by the receiver determine or forfeit the
franchise of the original company over Washington avenue,
so as to prevent the defendant, who had succeeded to its
rights, from relaying its tracks thereon.  Such abandonment
only operated as a cause of forfeiture, of which the public
alone could take advantage.  (*Trelford* v. *Coney Island &
Brooklyn R. R. Co.*, 6 App. Div. 204; *Thompson* v. *N. Y.
& H. R. R. Co.*, 3 Sandf. Ch. 625.)  A railroad corporation
owes a duty to the public to exercise the franchise granted to
it, and it cannot abandon a portion of its road and incur a for-
feiture at its mere pleasure.  A charter must be accepted or
rejected *in toto*.  If accepted it must be taken as offered, and
the company has no right to accept in part and reject in part.
(*People* v. *Albany & Vermont R. R. Co.*, 24 N. Y. 261,

269; *Matter of Metropolitan Transit Co.*, 111 N. Y. 588; *Collins* v. *Amsterdam St. R. R. Co.*, 76 App. Div. 249; *Goelet* v. *Metropolitan Transit Co.*, 48 Hun, 520.)

The right to construct and operate a street railway is a franchise which must have its source in the sovereign power, and the legislative power over the subject has this limitation, that the franchise must be granted for public and not for private purposes, or at least the grant must be based upon public considerations. It is well settled on the soundest principles of public policy that a contract, by which a railroad company seeks to render itself incapable of performing its duties to the public, or attempts to absolve itself from its obligations without the consent of the state, is void and cannot be rendered enforceable by the doctrine of estoppel, and any contract which disables the corporation from performing its functions without the consent of the state, and to relieve the grantees of the burden it imposes, is in violation of the contract with the state, and is void as against public policy. (*Fanning* v. *Osborne*, 102 N. Y. 441; *Union Pacific R. Co.* v. *Chicago, R. I. & P. Ry. Co.*, 163 U. S. 564, 581; *State* v. *Hartford & N. Haven R. R. Co.*, 29 Conn. 538; *State* v. *S. C. & P. R. R. Co.*, 7 Neb. 357; *City of Potwin Place* v. *Topeka Ry. Co.*, 33 Pacific Rep. 309; *State ex rel. Grinsfelder* v. *Spokane St. R. Co.*, 53 Pacific Rep. 719; *King* v. *Severn & Wye R. Co.*, 2 B. & Ald. 646.)

Within the principle of the cases cited it is obvious that the public had an interest in that portion of the Schenectady street railway which was constructed in Washington avenue, which could not be destroyed or abandoned without the consent of the state, and that the consents given by the plaintiffs survived the attempted abandonment of the railway upon Washington avenue. That such was the policy of the state is manifest, and, independent of the statute, neither the corporation, the common council, nor the receiver possessed any right to abandon the property or any part thereof. Nor could they destroy the effect of the consents of the plaintiffs through which the company acquired the right to construct

its railway over the street. That such was the law anterior to the statute we have no doubt,. and the statute, which is little, if any, more than a codification of the law as it previously existed, expressly provides that in case of the dissolution of the charter of a street surface railroad corporation, or upon its repeal, the consents of the owners and of the local authorities having control of the highway upon which the railroad shall have been constructed, shall not be deemed to be in any way impaired, revoked or terminated by such dissolution or repeal, but shall continue in full force, efficacy and being. (Railroad Law, § 105.) The defendant was a reorganized corporation which, by virtue of such foreclosure and sale, acquired all the rights and franchises of the original company, and is bound to exercise the franchises of its predecessor. (Stock Corporation Law, § 3.)

These plaintiffs also seek to have their consents held ineffective, upon the ground that the defendant subsequently attempted to obtain the consent of the property owners to a reconstruction of its road on Washington avenue, and having failed, has secured the approval of that route by the Appellate Division. The fact that the defendant, from abundant caution, acquired the approval of the court to run its road over that portion of Washington avenue, in no way forfeited or impaired its rights acquired under the original consents of these plaintiffs. That proceeding was, perhaps, unnecessary, but it was at most by way of further assurance and not destructive of the rights already acquired. These consents being in the nature of conveyances of easements in the street, the right thereby acquired was not destroyed by reason of the proceeding which was taken to obtain the approval of the Appellate Division. (*Adee* v. *Nassau Electric R. R. Co.*, 65 App. Div. 529; affirmed, 173 N. Y. 580.) Without further discussion of this question, we are of the opinion that the consents of the three plaintiffs mentioned gave the Schenectady Street Railway Company the right to build and operate its railroad over Washington avenue in front of their premises; that no action of the receiver, the common council, or abut-

ting owners has in any way invalidated or affected such consents, and that the same are in full operation and effect, and constitute a bar to their recovery in this action. Therefore, the judgments in their favor should be reversed.

We are now brought to the consideration of a question which need be discussed only in its application to the *Van Epps* case. Under this decision, by which we have held that the property of all the plaintiffs originally extended to the center of Washington avenue, and in view of our decision in the *Peck Case* (170 N. Y. 298), it follows that as to a part of the Van Epps lot at least, he originally owned the fee to the center of the street and the defendant had no right to relay its tracks over his premises. It is, however, claimed that inasmuch as the street was subsequently widened and a strip of land outside of the original street was taken, he cannot recover for that portion lying between the center of the street and the line of the lands thus taken. Without specially discussing the grounds upon which this claim is made and thus unduly prolonging this already too lengthy opinion, we think it must be held that the fee to some portion of the land owned by Van Epps and lying between the center of Washington avenue and the former boundary thereof, still rests in him, and that he is entitled to restrain the defendant from building its road across that piece of land, although its value can be little more than nominal. So far as this question applies to the land of the plaintiff Whitmyre, it need not be considered, as we have already held that by virtue of the consent he executed, he has no right to maintain the action.

We have examined the various exceptions to the admission and rejection of evidence, but have found none that would justify a reversal or that require special consideration. It follows that as to the actions in which Paige, Whitmyre and Thompson are plaintiffs, the judgments should be reversed and the complaints dismissed, and that as to the actions in which Lansing, Van Epps and Beattie are plaintiffs, the judgments should be affirmed.

Judgments in the Paige, Whitmyre and Thompson actions

reversed and the complaints dismissed, with costs. As to the actions in which Lansing, Van Epps and Beattie are plaintiffs, the judgments are affirmed, with costs.

PARKER, Ch. J., O'BRIEN, HAIGHT, VANN, CULLEN and WERNER, JJ., concur.

Judgments accordingly.