authorize them to find that the injury was occasioned solely by the negligence of the defendant.' Can this be true without holding that, in every case where a verdict is set aside as against the clear weight of evidence, the court should take the decision of the case from the jury? Certainly it is not easy to conceive any other definite position which would be consistent with the decisions. Steves v. Railroad Co., 18 N. Y. 422."

The court ought to have directed a verdict in favor of the landlord, as requested at the trial (Douglas v. Seiferd, 18 Misc. Rep. 188, 41 N. Y. Supp. 289), and the exception to the refusal presents error.

The tenants' counsel challenged the landlord's right to maintain the proceeding, on the ground that he had not complied with chapter 303 of the Laws of 1882, which now forms part of the Revised Statutes (9th Ed.; volume 3, p. 2546), and reads as follows:

"No monthly tenant shall hereafter be removed from any lands or tenements in the city of New York or in the city of Brooklyn on the grounds of holding over his term (except when the same expires on the first day of May) unless at least five days before the expiration of the term the landlord or his agent serves upon the tenant, in the same manner in which a summons in summary proceedings is now allowed to be served by law, a notice in writing to the effect that the landlord elects to terminate the tenancy, and that unless the tenant removes from said premises on the day on which his term expires the landlord will commence summary proceedings under the statute to remove such tenant therefrom."

Prior to the passage of this act a monthly tenant could be dispossessed without the service of any notice other than a summons or precept issued according to the command of the statute; and the only condition imposed by the act is to require notice to the tenant, for, while he might be in possession under a monthly holding, the landlord was not chargeable with notice of the nature or duration of the subtenancies which the tenant might create. Notice in this case was served upon the tenant, and that complied with all legal requirements. Hence there is no merit in the objection made.

The jury found a verdict in favor of the tenant and undertenants, and the landlord moved for a new trial under chapter 748 of the Laws of 1896, which motion the justice properly denied on the sole ground of want of power. This act authorizes a justice of a district court to set aside the verdict of a jury rendered "in an action," and does not apply to summary proceedings, which are denominated "special proceedings" as distinguished from "actions." Dorschel v. Burkly, 18 Misc. Rep. 240, 41 N. Y. Supp. 389. The only remedy open to the landlord after the verdict was the appeal which he has taken.

The final order must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(13 App. Div. 279.)

BEEKMAN et al. v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. January 22, 1897.)

1. STREET RAILROADS—FRANCHISES—STATUTORY REGULATIONS.

The control of the state over the granting of street-railroad franchises was not abrogated by Const. art. 3, § 18, providing that no law shall authorize the construction of a street railroad without the consent of the local authorities; and therefore the sale of a franchise, though with the consent of the local authorities, is invalid, unless the statutory requirements are complied with.

**2. SAME—TWO EXTENSIONS SOLD TOGETHER—VALIDITY.**

The sale together of the franchises of two disconnected extensions of a street railroad is invalid, under Laws 1892, c. 565, § 93, providing the franchise of building an extension must be sold to the highest bidder; that but one fare shall be charged over the extension and the original road; and that, if the franchise shall be purchased by another than the corporation whose road is extended, the receipts shall be divided,—since, in view of the fact that, under such provisions, the sale together of the franchises for two disconnected extensions would deter competition in the purchase thereof, the uniform use of the singular number in the statute in referring to extensions requires an interpretation forbidding the joining of two extensions in a sale.

**3. SAME—CONSENT TO USE OF ORIGINAL LINE.**

The invalidity of such a sale is not obviated by a consent of the corporation whose line is extended that the purchaser of the extension franchises may use the original road as a connection between the extensions, since such privilege is dependent on the continued existence of the original road.

**4. SAME—INJUNCTION OF BY ABUTTING OWNER—LACHES.**

An abutting owner is not estopped by laches from proceeding to enjoin the unauthorized construction of a street railroad, where the action was commenced within two weeks after the work of construction began, and she had no knowledge, before that time, that the work was about to commence.

**5. PARTIES—RESTRAINING CONSTRUCTION OF STREET RAILROAD.**

The city is not a proper party to an action by a property owner to enjoin the unauthorized construction of a street railroad, though the lack of authority to construct results from the invalidity of the grant by the city of a franchise for such construction.

**6. STREET RAILROADS—DAMAGE TO ABUTTERS—SCOPE OF INJUNCTION.**

One whose place of business abuts on a highway may enjoin the unauthorized construction of a street railroad over only so much of the highway as is necessary for convenient access by his customers, and therefore an injunction against the construction over seven miles thereof is too broad.

Appeal from special term, New York county.

Action by Catherine L. Beekman and others against the Third Avenue Railroad Company, commenced December 17, 1896, to enjoin the construction of a street railroad on Kingsbridge road. From an order granting a preliminary injunction, defendant appeals. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

William H. Page, Jr., and Edward Lauterbach, for appellant.
Elihu Root, for respondents.

RUMSEY, J. The plaintiffs are the owners of a piece of land situated on the corner of 182d street and Kingsbridge road, or Broadway. The buildings upon the place have been used for many years as a road house or hotel, which is much frequented by people who are accustomed to drive along the Kingsbridge road and by bicyclists in their excursions in that direction. The defendant is the owner and occupant of a street railroad extending through the city of New York to a point on 162d street.

In the month of July, 1895, the defendant presented to the common council of the city of New York a petition for its consent to build certain extensions of its road,—one of them being from the junction of Kingsbridge road, or Broadway, and West 162d street, connecting at that point with the defendant's railroad as then op-

erated upon Amsterdam avenue, and running thence in a northerly direction along the Kingsbridge road, past the premises of the plaintiff, to the city line; also, another extension commencing at the junction of West 125th street and St. Nicholas avenue, connecting there with the defendant's road on that street, and running south on St. Nicholas avenue to 116th street; also, two other extensions, which are not necessary to be more particularly mentioned now. Such proceedings were had with reference to this petition that on the 14th day of November, 1895, the franchise for making all of these extensions was sold at auction by the comptroller of the city of New York, pursuant to and in accordance with resolutions to that effect previously adopted by the common council, and the franchise was bid off by the defendant. Before the commencement of this action the defendant began the construction of these extensions on Broadway, and it has dug up a certain portion of that street near 162d street, and extending up towards the plaintiffs' premises, but just how far is not made to appear.

It is alleged in the complaint that the defendant insists upon its right to construct the extension to the city line, along Broadway, past the plaintiffs' premises, and threaten to do so, and this is not denied by the defendant. The plaintiffs allege that the construction and maintenance and operation of these extensions are wholly unauthorized by law, and will constitute public nuisances, and set out facts by reason of which they claim that it will cause special damage to them as the owners of this property. Because of these facts, they ask for a judgment that the defendant shall be permanently enjoined and restrained from proceeding with the construction of the extension of this road in front of their premises, and that, during the pendency of the action, a temporary injunction shall be granted to substantially the same effect. At the special term the court granted a temporary injunction, practically restraining the construction of the extension along any portion of the proposed route on Broadway, and it is from that order that this appeal is taken.

It is conceded by all that an attempt to build a street railroad on a public highway without any authority is a public nuisance (Fanning v. Osborne, 102 N. Y. 441, 7 N. E. 305), and that any person upon the line of the street where the railroad is building, who suffers a special damage because of the existence of the nuisance, is entitled to his action for an injunction to restrain the nuisance so far as it affects his special right. Starting with this proposition as a premise, the plaintiffs claim that the consent of the corporation of the city of New York to the construction of these extensions by the defendant was not given in the manner prescribed by the statute which authorizes such consents, and therefore it is void and inoperative, and affords no protection to the defendant in its proposed work of building a railroad along Broadway. Whether this contention is well founded is the principal question. In discussing it we shall not examine into all the grounds of invalidity insisted upon by the plaintiffs in their complaint, nor shall we examine the ground adopted by the learned judge at the special term in his opinion. We do not mean

by this to intimate any opinion on the part of this court whether any of those grounds of objection are well taken or not, nor whether the complaint is sufficiently broad to permit a judgment to be put upon the ground taken by the learned justice at the special term. We do not discuss these questions simply for the reason that, upon the single ground discussed in this opinion, we have determined that the attempt to sell these extensions was invalid, and, therefore, that the defendant acquired by virtue of it no right to build its road over these routes. Whether the other grounds of invalidity are well taken, or not, is left to be considered by the court upon the trial of the action, upon such facts as shall then be presented, and upon the pleadings as they shall then exist.

The principal ground of objection to the validity of the action of the city is that more than one extension was included in the resolutions and the notice of sale, and that the attempt to sell more than one extension, at one time, by one sale, was beyond the power of the corporation. There can be no doubt that there is no power in the city of New York to grant a franchise for constructing and operating a railroad in the public streets. That proposition was laid down in the case of Milhau v. Sharp, 27 N. Y. 611, and it has ever since been recognized as the law of this state. Constitutional amendments, made long after that case was decided, regulated to a very considerable extent the power to grant a franchise of this nature, and made it necessary always to acquire the consent of the municipal authority before it should be granted. But the franchise, although dependent upon the consent of the city before it could become operative, was nevertheless a franchise granted by the people of the state. The legislature, which originally had the right to control the granting of these franchises, was not deprived of that right by constitutional changes. The manner of the exercise of the right was regulated by the constitution, and to that extent the legislature was bound by it; but, beyond that, the power of the legislature was left as supreme as ever, and it was still at liberty to direct the manner in which the consents of the municipal corporation should be given, and to say what was necessary to the validity of those consents. In re Thirty-Fourth St. R. Co., 102 N. Y. 343, 350, 351, 7 N. E. 172. Having the right to prescribe the manner in which the consents should be given, it was clearly within the power of the legislature to direct what should be done upon the sale of an original franchise, or upon each or any extension thereof; and no sale of a franchise could be valid unless it was proceeded with in the manner prescribed by the legislature for that purpose. Not only must the common council do those things which the legislature had prescribed, in the manner in which they were directed to be done, but it had no power to impose any other or further conditions than were prescribed by the legislature, because it is a well-settled rule of law that, where the legislature gives authority to do a thing in a certain way, it can be done only in that way, and all other modes of doing it are forbidden. Suth. St. Const. § 326; Smith v. Stevens, 10 Wall. 321; City of New Haven v. Whitney, 36 Conn. 373.

The condition upon which the consents shall be given, and the manner in which the sale of a franchise shall be had, are prescribed in the ninety-third section of the railroad law, which is found in the second volume of the Revised Statutes of New York (9th Ed.) at page 1300. It prescribes that the consents must contain a condition that the franchise of building a railroad, or an extension of one, upon any street, shall be sold at public auction to the bidder who shall agree to give the city the largest percentage per annum of the gross receipts of the corporation. It is evident, from this, that the object of the statute is to assure to the city the largest practicable percentage per annum of the receipts that can be paid for the operation of the particular road which is to be sold. The statute directs, further, that the consent to be given by the city shall provide that but one fare shall be exacted for passage over any extension or branch which shall be sold, and that, if the right to build it shall be purchased by any corporation other than the applicant, the gross receipts shall be divided in the proportion that the length of such extension, so sold, shall bear to the entire length of the road of the corporation which shall have applied therefor and of such extension, and that, if the right shall be purchased by the applicant, the percentage shall be calculated on such portion of its gross receipts as shall bear the same proportion to the whole value thereof as the length of such extension or branch shall bear to the entire length of its road. The statute further directs that no one can bid unless it is a duly-incorporated railway corporation, authorized to build a street railroad.

The statute, in expressing these conditions, uses only the singular number (branch or extension), and not the plural. It is claimed by the plaintiffs that this sedulous use of the singular in this section, taken in connection with the special provisions which are contained in the section, necessarily compels us to construe the statute to forbid the sale of more than one extension at one time. We think this contention of the plaintiffs is well founded. The object of the statute is clearly to obtain as large a percentage as possible for the city at the sale of each extension. To do that it is necessary that the bidding should be as free as is consistent with the fact that it is only railroad corporations who are at liberty to bid. Those who bid must understand that, if they succeed in their bidding, they will have the right to construct a piece of railroad which will be likely to be profitable in itself. The railroad thus constructed, if it is an extension of the applicant's road, must necessarily connect with that road, and be operated in conjunction with it, and but one fare can be demanded for continuous passage over the applicant's road and the extension,— the percentage to be taken by each company to depend upon the relative length of the applicant's road and of the extension which is to be built. The percentage which any corporation would bid for the right to build any particular extension would depend, of course, very largely upon the situation of that extension, the population of that portion of the city through which it passed, the length of the extension, the difficulty of building the road, and the practicability of economically running it. Any bidder, estimating the amount which

it could bid, must be governed very largely by a consideration of the last item; that is, the economical application of its power. It needs no argument to show that, if it were intended to use mechanical power, except that of horses, the application of such power to a piece of road like the southern extension sold under this consent, extending only from 116th to 125th streets, would be exceedingly expensive, whereas, the production of power for a road extending from 162d street northward to the city line, would be relatively quite economical; and that any corporation might be willing to pay a large relative percentage of its gross receipts for the privilege of building the last extension, whereas, it could pay but a very small, if any, percentage for the privilege of building the southern extension; and that, if it was called upon to bid for the privilege of building both extensions at the same time, without any adequate means of operating the two by the same power, it would practically be prohibition upon bidding for either.

These extensions are separated from each other by an interval of more than half a mile. No other company than the defendant has at present the right to operate the connecting link between them. If it is permitted to sell at one time two extensions which are half a mile apart, there is no reason why, at the same sale, two extensions cannot be put up, one of which should involve the right to run the defendant's road from its present southern terminus to the Battery, and the other include the particular extensions which were sold here. If two extensions may be sold at one time, ten may be sold, and the result would necessarily be that the only bidder would be the corporation whose railroad connected with each of the ten extensions which were sold at one auction, because no other road could afford to undertake the building of ten detached pieces of railroad, which had no connection with each other, except through the road of a competitor, and which could not be operated by the same plant.

But it is said that, in this particular instance, this objection was obviated because the Third Avenue Railroad Company included in its petition a consent that the buyer of the two extensions might operate its road on their branch, which now connects the two proposed extensions, with such power as it might see fit to use. This, we think, does not remove the objection. If some other corporation had bid off the two franchises, and had acquired the right to operate these two lines of railroad, nevertheless the right to operate them as one was dependent upon the franchise of the Third Avenue Railroad Company, would be subject to any incumbrances which that railroad might put upon its franchise or right of way, and would exist only so long as that railroad existed, and, if that railroad was abandoned, the right would necessarily cease. The defendant proposed to give no right to the bidder to use the power which it had placed on that portion of its road connecting these two proposed extensions. It simply authorized the purchaser of the two franchises to put its own power upon that portion of the street which was necessary to connect the two franchises thus bid off. But the bidder had no power to put any construction in that street, and it could not acquire such power by

the consent of the Third Avenue Railroad Company; for that could not grant it, and it could only get it, if at all, by a grant from the city, made pursuant to the statute, to connect two pieces of railroad, and whether such a consent could be given over a street already occupied, and when the consent would necessarily result in the destruction of the grant then existing over that street, is more than doubtful.

The southern extension sold at this auction was one which was valuable only to the Third Avenue Railroad Company. It was almost impracticable for any other road to use it. The northern extension was a great road in itself, and one which, in all probability, would be extremely profitable, either now or at some time in the near future, to any corporation which became the owner of it. The result of putting the two franchises together was to impose upon the profitable one the unnecessary burden of bidding for one which would probably be unprofitable, and thus reduce the percentage which would be given for the profitable franchise. These considerations are stated with reference to this particular case only, but they show good reason why the sale of only one extension or franchise should be permitted at one time, and why the statute, which in its terms permits of only one sale at one time, should be construed according to its letter.

It is quite true that the statutory construction law says that words in the singular number include the plural, and in the plural number include the singular, in the construction of statutes. But that provision only applies where it is clear that such is a fair intention of the legislature. Where the legislature, having used the plural number generally in an act, changes the mode of expression, and uses the singular number with reference to an express provision, and it can be seen that the use of the singular only was necessary to carry out its intention, the rule of construction just cited will not be applied. Rules of construction are resorted to only when it is necessary to apply them to ascertain the meaning of the statute, and when it is clear, without the application of such rules, they will not be used. If it were assumed, as must be the case, that the legislature intended to secure to the city, on each sale, the largest practicable percentage of the gross receipts of the operation of the particular road sold, it is easy to be seen that this object would be frustrated by the sale of several extensions at the same time. It is easy to demonstrate, mathematically, that where the percentage is to be estimated upon the proportion which the length of all the extensions, taken together, bears to the length of the original road, it will produce a much less sum than if it is estimated upon the proportion which the length of each extension, taken separately, bears to the length of the original road. It will be seen, therefore, that to permit the sale of more than one extension at one time, would operate to frustrate the intention of the legislature in two ways. In the first place it would diminish, and it might altogether take away, the possibility of procuring competitive bids for the right to build the road. In the second place, it would necessarily diminish the amount of the percentage which would be received by the city for the operation of the roads. For

these reasons we conclude that the sale of these franchises, by putting up both extensions at one time, and selling them together, was beyond the power of the common council, and was not permitted by the statute, and was void. There was, therefore, no valid permission given to this railroad company to build this extension, and it comes within the rule laid down in the case of Fanning v. Osborne, supra.

But it is said by the defendant that the plaintiffs were guilty of laches, because they permitted this construction to go on, until $2,-000,000 had been expended upon it, without making any objection, and therefore they should not be permitted now to obstruct it. We do not see that the papers show any such laches on the part of the plaintiffs. The work of building this road began in the first week in December, 1896. Just when the defendant began to tear up the streets does not appear. It does not appear that the plaintiffs had any knowledge that work was about to commence until after it had begun. It was held, in the case of Abraham v. Meyers, 29 Abb. N. C. 384, 23 N. Y. Supp. 225, 228, that the plaintiff as an abutting owner had no standing in court to begin an action restraining the construction of the road until there had been begun, or at least until there had been threatened, something which was likely to produce damage to her. That was not done in this case until very shortly before the service of the order to show cause, and we do not think, upon the whole, that it can be said that the plaintiffs were guilty of laches in proceeding no sooner.

The defendant claims that there is a defect of parties, because, as it says, the city should be joined as a party defendant. Its claim is that this is an action to annul a municipal grant, and that cannot be done without making both parties to the grant parties to the action. It is not necessary to discuss whether the last proposition is correct, or not, because the action is not to annul the grant. It is simply to prevent an infringement upon the rights of the plaintiffs. No right is asserted against the city, and no relief is asked against it. The city is no more interested in the result of this action than in the result of the numberless other actions which have been brought to assert rights claimed on account of the invalidity of actions of the city officials, such as those which grew out of the illegal sales for taxes. In such cases it has never been held that the party whose property was illegally sold could not recover it back from the person who had it in possession, or could not restrain that person from interfering with it, without making the city a party. The city is not in any way interested in the result of this action, because, whatever that result may be, the city is not bound by it, and the judgment is not evidence against it, nor does it necessarily affect its rights. We have not been able to discover any reason why it was necessary that the city should be joined in this action. In the case of Milhau v. Sharp, 15 Barb. 193, 17 Barb. 435, and 27 N. Y. 611, although it was argued by distinguished counsel, and was brought for substantially the same relief sought in this case, there was no suggestion that the city should be made a party, and such an idea did not seem

to occur to the court as a reason why the relief sought for should not be granted. In that case, as in this, the city received a compensation depending upon the use of the purchase, and there was just the same reason for making it a party there as there is for making it a party here. This is simply an action to restrain a wrong about to be committed by the defendant, in which the city is not in any way interested, and which does not directly in any way affect its rights.

We have considered the other objections made by the defendant, but in our judgment none of them is well taken, and the plaintiffs are entitled to an injunction, so far as they show that it is necessary to protect their rights. But we agree with the defendant that the scope of the order is too great, and the plaintiffs do not show any reason why they should be entitled to an injunction so broad as was given to them by the special term. Certainly they are entitled upon this preliminary hearing to no broader injunction than is necessary to protect their rights during the pendency of the action. How far the injunction should go to produce that effect it is incumbent upon them to show. This injunction restrains the building of this road for a distance of seven miles. It is very clear, as a matter of fact and a matter of law, that the plaintiffs have received no injury which would warrant the interference with the work at so great a distance from their premises. Their complaint is that the work upon this road will make their premises difficult of access, and take away the custom which their house was wonted to receive. The injury is an injury to their business, because it takes away the means of access to their premises. But, strictly speaking, they are not deprived of their means of access unless the road is torn up immediately in front of their premises, or so close to them that there is no convenient means of getting to them. They are not entitled to the maintenance of any particular highway, for any particular distance away from their premises, by means of which they can be approached. The highway might be taken up near their premises, and they would have no cause for complaint, and no right to compensation, if they were left a convenient means of access by which their customers could reach their house. Such a means of access they do not lose by the digging up of a road seven miles away, and that nuisance cannot be said in any way to inflict any special damage upon them. There is no information, given in the complaint or in the affidavits, which would enable us to say that the proper protection of the plaintiffs' business requires that this injunction should extend over any portion of the highway except that directly in front of their premises. If more were required, it is their duty to make proof of that fact. They have not done it. While they are entitled to a preliminary injunction, the facts now appearing do not warrant its extension beyond any portion of the Kingsbridge road except that directly in front of their premises, and the order of the court must be modified by restraining the injunction to that portion of the road. The plaintiffs will still be at liberty to show upon the trial how ex-

tensive an injunction is necessary to give their property and business the protection to which they are entitled, and the final judgment to be entered in the action can thus protect their rights perfectly.

The order must be modified by forbidding the construction of the defendant's railway upon that portion of the Kingsbridge road which is immediately in front of the plaintiffs' premises, and, as thus modified, affirmed, without costs to either party in this court.　All concur.

