### ADEE v. NASSAU ELECTRIC R. CO. et al.

(Supreme Court, Appellate Division, Second Department. November 15, 1901.)

1. STREET RAILWAYS—MERGER OF COMPANIES—LEGALITY— QUESTION — HOW RAISED.

Where, in an action to restrain a street railway company from constructing its track on a certain street on the ground that it has not the consent of a sufficient proportion of the property owners, it appears that another company is merged in such company, and that each had consent of different owners to build a road on such street, and the legality of such merger is questioned, such question cannot be determined in such action, but must be dealt with in an action brought for that purpose.

2. SAME—CONSENT OF PROPERTY OWNERS—SEVERAL COMPANIES—CONSOLIDATION —RIGHTS UNDER MERGER.

Where two or more street railway companies are organized to build a railway on the same street, and each obtains the consent of different property owners, on the merger of such companies the consolidated company succeeds to the rights given by all such consents.

3. SAME—INJUNCTION—PRIMA FACIE CASE—ESTOPPEL.

Plaintiff, owning property on a certain street, sought to restrain defendant from constructing a track along such street on the ground that it had failed to obtain consent of the owners of one-half the property bounded on the street, as required by the railroad law. Defendant alleged it had such consents, and attached a list thereof to the answer. Plaintiff proved his ownership of abutting property, and that in 1896 defendant applied for commissioners, under Const. art. 3, § 18, and Railroad Law, § 94, to determine whether a railroad ought to be constructed on such street, alleging its inability to obtain the requisite number of consents, and that such proceeding was still pending in the court of appeals. Plaintiff then rested. The list of recorded consents attached to the answer as a bill of particulars, on which defendant relied, included consents granted to another company, which merged with defendant after such application for commissioners was filed, and the consolidated list included a sufficient number of owners. Held, that the pendency of the application for commissioners did not estop defendant from claiming that since the consolidation it had a sufficient number of consents, and hence plaintiff's proofs did not establish a prima facie case for injunction.

**4. SAME—RIGHT TO LAY TRACK.**
Where a street railway company has received and recorded consents of the owners of one-half in value of the property bounded on a street, executed in the manner prescribed in Railroad Law, § 91, such consents are sufficient, on the face of the papers, to justify it in entering on the street and laying its tracks.

**5. SAME—RECORDED CONSENT—DEFECT—BURDEN OF PROOF.**
Where a street railway has received and recorded consents of abutting property owners to lay its track on a street, the burden is on a party claiming a consent to be ineffectual to show wherein it is defective.

**6. SAME—LICENSE—IRREVOCABLE.**
Under Const. art. 3, § 18, providing that no street railroad shall be authorized except on consent of the owners of one-half in value of the property bounded on the street, or on the determination of commissioners where such consents cannot be obtained, a consent properly executed and recorded is not a mere license, revocable at will, but conveys permanent rights, binding on the owner and his grantees.

**7. SAME—CONSENT OF OWNERS—TIME OF EXECUTION.**
The consents of the owners of a majority of the property bounded on a street to the construction of a street railroad thereon, as provided in Railroad Law, § 91, may be executed and recorded at different times.

**8. SAME—FAILURE TO RECORD—EFFECT AS TO SUBSEQUENT GRANTEE.**
Where a street railroad company fails to record the consent of a property owner to the laying of the track until after such owner has conveyed such property, such consent is not thereby invalidated, but the grantee of such property is not estopped to assert any rights which may have come to him under his deed.

**9. SAME—NONCONSENT—EFFECT—DAMAGES.**
Where a street railroad company has obtained consent to lay the track from the requisite number of property owners, a nonconsenting owner of abutting property may maintain an action for his damages, but cannot prevent the construction of the road.

Appeal from special term, Kings county.

Action by Fred Adee against the Nassau Electric Railroad Company and another. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

Edward M. Grout, for appellant.
Augustus Van Wyck, for respondents.

WOODWARD, J. The plaintiff is the owner of property abutting upon Union street, in the borough of Brooklyn. He brings this action to restrain the defendants from constructing and operating a double-track trolley street surface railroad on this street, upon the ground that the consent of the owners of one-half in value of the property bounded on the street had not been obtained and recorded. The defendants denied this allegation, and alleged that they had obtained and recorded such consents; and, after a trial extending over several days, the learned court at special term decided that the defendants had acquired all of the rights required by the statute, and judgment was entered dismissing the complaint on the merits. From this judgment, appeal comes to this court.

We have followed the very able argument of the appellant's attorney, and have examined in detail the authorities cited, but we are unable to discover any sufficient justification for the reversal of

72 N.Y.S.—63

the judgment in this case. In the discussion which is to follow, it does not appear necessary to take into consideration the provisions of chapter 838 of the Laws of 1896, which is a special act in reference to Union street, because it does not appear to be questioned that all of the consents have been recorded as provided in that act, if it is controlling; and it is open to question, though not raised here, whether such act, making a different rule from that laid down by the constitution of the state, is to be considered as affording the law of this case. Beekman v. Railroad Co., 13 App. Div. 279, 283, 43 N. Y. Supp. 174, and authorities there cited; s. c. 153 N. Y. 144, 158, 47 N. E. 277. More than this, the act itself provides that "neither proceedings now pending, nor consents heretofore given, are affected by this act," and, as the most serious questions occur in reference to consents given prior to the passage of this act, they are not within its scope. The defendants have, beyond a question, recorded alleged consents of property owners upon Union street aggregating more than one-half in value of all the property abutting upon such street, and the controlling question presented upon this appeal is whether such consents are sufficient in law to meet the requirements of the constitution and the statutes. The plaintiff, it may be assumed for the purposes of this appeal, is the owner of the fee of Union street to the center of such highway in front of his premises; and he brings this action, not to recover damages for the taking of his property, but to restrain the defendants from constructing and operating a double-track trolley street surface railroad along this street, alleging that the defendants have failed to secure the necessary consents of the property owners along such street, and that "the construction of such railroad is unlawful and will irreparably damage the plaintiff's property, and that for such damage he has no adequate remedy at law." Passing over the fact that the evidence does not disclose that the plaintiff will suffer any damages, and disregarding the fact that the plaintiff has a complete remedy for any damages he may sustain, in an action brought for that purpose, we will pass to the consideration of the real issue presented, for this appears to be what is desired upon this appeal.

The first point raised by the plaintiff is that the court erred in holding that the plaintiff had not on the first day of the trial made a prima facie case sufficient to put defendants to the proof of their alleged consents. The plaintiff proved his title to the abutting land, proved the proceeding then pending argument in the court of appeals, in which the defendant the Nassau Electric Railroad Company, in an application for commissioners under the provisions of section 18 of article 3 of the constitution, and section 94 of the railroad law, had alleged that it was unable to secure the necessary consents, and then rested. The theory of the plaintiff is that, having established these facts, the burden of proof was shifted upon the defendants, and that it was incumbent upon them to prove that they had the necessary consents.

In order to understand this case, it is necessary to recite some of the history of the defendants: In June, 1892, the Union Rail-

road Company, organized under the laws of this state, made an application to the common council of the then city of Brooklyn to construct and operate a street surface railway, to be run by electric power, along certain streets,—among them, Union street, the seat of the present controversy. This franchise was granted by the common council, but was subsequently set aside by the courts. Adamson v. Railroad Co., 74 Hun, 3, 26 N. Y. Supp. 136. In furtherance of the franchise which it was sought to perfect, the Union Railroad Company secured the consents of a considerable number of persons owning property abutting upon Union street, but, having no consent of the municipal authorities, the work was not progressed; and in April, 1894, the Union and Nassau Companies entered into a contract or agreement by which the Union Company granted to the Nassau Company "the right to use all the routes, franchises and railroads" of the former, and the Nassau Company covenanted to construct a railroad on such routes. In the month of March, 1896, the Nassau Electric Railroad Company, a domestic corporation organized for the purpose, among other things, "of constructing, operating and maintaining a street surface railroad on Union street from Hamilton avenue to Ninth avenue," etc., made an application for the appointment of commissioners, under the provisions of the constitution of the state, and section 94 of the railroad law, to determine whether a railroad ought to be constructed and operated through Union street from Hamilton avenue to Ninth avenue; said application being made because the consents of property owners required by law had not been and could not be obtained by it; and these commissioners, after a hearing of the several parties, determined that such road ought not to be constructed and operated through the said street. The said railroad company then applied to the appellate division of the supreme court, in the Second department, which court had appointed the said commissioners, to set aside the said report and determination of the said commissioners, which motion was denied; and the said railroad company appealed from the said decision to the court of appeals, where the order has since been reversed. In re Nassau Electric R. Co., 167 N. Y. 37, 60 N. E. 279. In the meantime the Nassau Electric Railroad Company (hereafter referred to as the "Nassau Company"), which was organized in 1894, had secured the consent of the state board of railroad commissioners and the local authorities for the construction of its lines through many of the streets of Brooklyn, including the said Union street; and in June, 1898, the Nassau Company filed a certificate that the Union Railroad Company, the Nassau, and two other companies, owned or operated street surface railroads forming a continuous or connecting line; that the Nassau Company owned all the stock of the Union Company; and that the Nassau directors had determined to merge the companies. There is some suggestion that this consolidation or merger of these corporations was not made in conformity to the law, but we are of opinion that this is a question which is not to be disposed of under the pleadings in this case; that it is one to be dealt with in an action brought for that particular purpose, if at

all; and that in the meantime we may assume that the merger was properly made, and that the Nassau Company succeeded to all the rights of the Union Company, whatever those may have been. If this is the real state of affairs, then it may well be that the Nassau Company in 1896 could not get the necessary consents; that, with the consents which had previously been made to the Union Company, it was impossible to secure a sufficient number to have one-half in value of the property abutting upon the street, and the application for the appointment of commissioners was entirely consistent with its then attitude, and does not estop the Nassau Company to-day, as the owner of the rights of the Union Company, to assert that it has the required number of consents. Consents to the Union Company, so long as that company had a separate existence, could not be consents to the Nassau Company; but when the two companies were merged into one, the Nassau surviving, all the rights of the former company became a part of the rights of the latter; and the mere fact that the Nassau Company continued the matter of the original application in court, it may be, for no other purpose than to have the law determined, is not sufficient to justify this court in holding that it may not proceed to act upon the rights thus secured. In 1900 the Nassau Company leased to the defendant the Brooklyn Heights Railroad Company all of its railroads, and all of its franchises, rights, and privileges to construct or operate railroads, and all railroads that might thereafter be constructed or operated by or in behalf of the Nassau Company, in language broad and comprehensive enough to cover all of the rights which the Nassau Company may have acquired in any manner, either in tangible or intangible property, franchises, consents, etc.

Keeping these facts in view, and remembering that the defendants had furnished the plaintiff with a statement of the consents upon which it relied, in the nature of a bill of particulars, which embraced the consents originally given to the Union Company, with others granted to the Nassau Company, we are of the opinion that it was not error for the court to hold that the plaintiff had not established a prima facie case. The consents were made in the usual form, "acknowledged and proved as are deeds entitled to be recorded"; and section 91 of the Railroad Law provides that the—

"consents of property owners heretofore obtained to the building, extending, operating or change of motive power shall be effectual for the purposes herein mentioned and may be deemed to be sufficiently proved and shall be entitled to be recorded, whenever such consents shall have been signed, executed or acknowledged before an officer authorized by law to take acknowledgments of deeds, or before or in the presence of a subscribing witness, and without regard to whether or not the subscribing witness shall have affixed his signature in the presence of the subscriber: provided that the proof of such signing, execution or acknowledgment shall have been made by such subscribing witness in the manner prescribed by chapter three, part two, of the Revised Statutes."

These consents, which recite ownership in the individual making them, come within the provisions of this statute, and are entitled to be recorded. They are therefore sufficient, upon the face of the

papers, to justify the Nassau Company in entering upon the street and laying down its tracks. The plaintiff alleges, upon information and belief, that the Nassau Company has "not obtained the consent of the owners of the majority in value of the property bounded on Union street duly acknowledged or proved," but "that, on the contrary, more than a majority in value of the owners of property on Union street have failed and refused to consent to the construction of a railroad on said street"; and it is clearly the duty of the plaintiff to establish the facts alleged in his complaint, before he can ask for the equitable relief demanded. This portion of the pleading is evidently made under the provisions of chapter 838 of the Laws of 1896, which require the "owners of a majority in value of the property bounded on such portion of such street," etc., instead of one-half in value, as required by the constitution and the railroad law; but it is not very material to the question, as, if the consents recorded by the defendants are good, there is no doubt that there is a majority of the value of property upon the street represented by such consents. The defendants deny the allegations of the complaint above recited, and we know of no rule of law which would compel the defendants, whose consents were recorded, to assume the burden of proving that such consents were legal and effective. The statute provided what shall entitle the consents to be recorded, and when they are recorded it is for the plaintiff to show that they are defective, if such be the case. Conceding that the Nassau Company had no right to construct the railroad until it obtained the consents required by the statute, and that, when challenged as to its right in this respect, it imposes no harsh rule to compel it to produce and fully establish such authority (Dusenberry v. Traction Co. [Sup.] 61 N. Y. Supp. 420, 426), we are of opinion that this has been done when the defendant has furnished a bill of particulars showing the consents which have been recorded under the provisions of the statutes, and that the burden of proving these consents to be ineffective is upon the plaintiff.

The second point urged by the plaintiff is that the court below misapprehended the nature of the effect of an abutting property owner's consent to the construction of a street surface railroad, and in support of this contention it is urged that such consents are a mere license, revocable at will, and revoked by a conveyance of the property, at least before the construction of the railroad, or else that they amount to an abandonment of the abutter's easement in the street, where the abutter does not own the fee thereof, or a grant of an easement or right of way in the street, where the abutter owns the fee subject to the ordinary use of the highway. In the second and third cases we are told that such consents are revocable prior to the construction of the railroad, and are subject to the recording act. If we read and catch the spirit of the constitution and the statute aright, these consents are not mere licenses to be revoked at will, or by the transfer of the property before the construction of the railroad; nor do they contemplate a conveyance of real estate, so as to bring them within the provisions of section 241 of the real property law, as defined by section 240 (chapter 547,

Laws 1896). It is true that a mere parol license to construct a railroad over the lands of an individual, under the law as it existed prior to 1875, may be revoked at will, even though large sums of money may have been expended upon the strength of such license (Murdock v. Railroad Co., 73 N. Y. 579; Ketcham v. Newman, 116 N. Y. 422, 425, 22 N. E. 1052); but by the provisions of section 18 of article 3 of the constitution, which went into effect on the 1st day of January, 1875, the legislature is inhibited the power to pass a private or local bill "granting to any corporation, association or individual the right to lay down railroad tracks," and the duty is imposed of passing "general laws providing for the cases enumerated in this section, and for all other cases which in its judgment may be provided for by general laws." A further limitation is, however, imposed; for it is provided that:

"No law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the appellate division of the supreme court, in the department in which it is proposed to be constructed, may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property owners."

The legislature, in giving effect to this provision, has passed a general law (section 91 of the railroad law) which would seem to preclude any special legislation affecting this question, though we do not find it necessary to decide this point, which provides that:

"A street surface railroad, or extensions or branches thereof, shall not be built, extended or operated unless the consent in writing acknowledged or proved as are deeds entitled to be recorded, of the owners, in cities and villages, of one-half in value, and in towns, not within the corporate limits of a city or village, of the owners of two-thirds in value, of the property bounded on and also the consent of the local authorities having control of, that portion of a street or highway upon which it is proposed to build or operate such railroad shall have been first obtained."

That the legislature regarded these consents as something more than mere licenses is plainly evidenced, not alone by the formalities required, making them not only capable of being recorded, but competent evidence (sections 933, 937, Code Civ. Proc.), but by the provision for preserving indefinitely the life of such consents as had been granted prior to the adoption of the statute. This, it seems to us, is a complete answer to the suggestion that the law contemplated that such consents should be secured at a given time, for it clearly provides that:

"Consents of property owners heretofore obtained to the building, extending, operating or change of motive power shall be effectual for the purposes therein mentioned and may be deemed to be sufficiently proved and shall be entitled to be recorded, whenever such consents shall have been signed, executed or acknowledged before an officer authorized by law to take acknowledgments of deeds, or before or in the presence of a subscribing witness," etc. Section 91, Railroad Law.

This provision found a place in the railroad law of 1895 (chapter 545, Laws 1895), and is sufficient to give validity to all of the consents given to the Union Company, as well as to all consents secured by the Nassau Company, up to that time.   If the Nassau Company or the Union Company failed to record these consents, the sale and conveyance of the properties on which these consents were based did not invalidate the consents.   The most that could be claimed would be that the present owners, having purchased without notice, would not be estopped to assert any property rights which may have come to them under their deeds as against the company.   This is clearly the doctrine supported by Foote v. Railway Co., 147 N. Y. 367, 42 N. E. 181, and it protects all of the rights of both parties.   If the Nassau Company has neglected to record its consents until the rights of third parties have intervened, it has only itself to blame, and it may not complain, perhaps, if it is called upon to pay for the property rights of subsequent purchasers in good faith without notice; but the fact that parties, strangers to the record now before us, may have a cause of action against the defendants for taking their property for a public purpose without just compensation, cannot give the plaintiff any rights in an action brought to restrain the defendants from constructing their railroad under the consents which have been given in writing by the property owners.   In other words, the plaintiff cannot be permitted to deprive the defendants of their property rights in these consents, which the statute declares "shall be effectual for the purposes therein mentioned" (section 91, Railroad Law), because some one else may have been deprived of his property in the highway. The consent, if valid when made, is the consent of the owner of the property, and, in contemplation of law, vests a certain property right in the company to which the consent is given, which cannot be devested by any subsequent transfer of the property, although the purchaser without notice may acquire the full right to demand compensation for any injury to his rights which may follow from the construction of the road.   These rights were appurtenant to the abutting property, were incapable of being separated therefrom, and passed upon a sale thereof to the purchaser, with the right to any remedy for the invasion thereof.   Foote v. Railway Co., supra, and authorities there cited.   The plaintiff, never having consented to the construction of the road, assuming him to be the owner of the fee of the street in front of his premises, may maintain an action to compel the payment of damages (Foote v. Railway Co., supra), but he has no right to prevent the construction of the road under the consents given by the owners of one-half in value of the abutting property.   True, it is suggested in White v. Railway Co., 139 N. Y. 19, 29, 34 N. E. 887, 890, that:

"Perhaps the consenting party might withdraw his consent if he had given it without any valuable consideration, and if the other party had done nothing under it so that its position would not be unfavorably affected by such withdrawal."

But this was before the amendment to the Railroad Law in 1895, above cited, and cannot be controlling here, even were it assumed

that no valuable consideration passed. The authority to make use of the public streets of a city for railroad purposes primarily resides in the state, and is a part of the sovereign power; and the right or privilege of constructing and operating railroads in the streets, which for convenience is called a "franchise," must always proceed from that source, whatever may be the agency through which it is conferred. Beekman v. Railroad Co., 153 N. Y. 144, 152, 47 N. E. 277. The provision of the constitution, as well as of the railroad law, that the road shall only be constructed with the consent of the owners of one-half of the value of real estate abutting upon the street, is designed for the protection of the landowners up to a certain point; but the further provision that the report of a commission appointed by the appellate division of the supreme court may be accepted in lieu of such consents is conclusive evidence that the sovereign power did not regard this privilege as a taking of the property rights of the individual, but merely as a part of the machinery to conserve the rights of the community as a whole; it being assumed that the property owners upon a highway would be the best guardians of these rights. See White v. Railway Co., supra. It is assumed in several cases that one consenting to the construction and operation of a street railroad along the highway is estopped from asserting a right to compensation, but this rule does not apply to those who have not consented, and who are the owners of the fee of the street. See Craig v. Railroad Co., 39 N. Y. 404, and authorities cited.

We are of the opinion that the consents issued to the Union Company were available to the Nassau Company, under the facts existing. If these consents were property,—and we think they were,—they belonged to the Union Company. It had an existence sufficient at least to own the consents which were presumably secured at its solicitation and expense, and it is hardly profitable at this time to consider collaterally whether the merger of the Union and Nassau Companies was lawful. It is not disputed that the Nassau Company owned all of the stock of the Union Company at the time of the merger, and we think, for the purpose of sustaining the judgment, it may be presumed that the companies acted in a lawful manner. At least, the Union Company has ceased to have a separate existence, and its property equitably belongs to those who own the stock, so that the plaintiff can have no superior equities in the premises, and is not entitled to the relief demanded.

We have already pointed out that the Nassau Company, after the merger, might be in a position to secure a majority of the abutting owners, where it would previously have been impossible, and that its declaration in the moving papers in the application for commissioners did not necessarily estop it from alleging that it had such consents. But it does not seem necessary to consider this point, as the court of appeals has reversed the order in that application, leaving the question open. In re Nassau Electric R. Co., 167 N. Y. 37, 60 N. E. 279.

We are unable to find any reason pointed out why the plaintiff is entitled to an injunction restraining the construction of this rail-

road. The trial court has found (and this finding is supported by the evidence) that the defendants have the consent of the owners of a majority in value of the property abutting upon Union street, where the property of this plaintiff is located. The construction of the railroad is not, therefore, unlawful; and, as the plaintiff is in a position to protect his rights as the owner of the fee of the street to the center of the highway, we are of the opinion that the court below has properly disposed of this case.

The judgment appealed from should be affirmed, with costs. All concur; HIRSCHBERG, J., in result.