whether the act in any of its inhibitions (one of which is gambling) is being violated.

While it may be, as said by Mr. Justice Gaynor in Olms v. Bingham, 116 App. Div. 804, 806, 101 N. Y. Supp. 1106, 1107, that "it is very easy to see the extortion that could be practiced on hotel proprietors by policemen and their superiors, if they were permitted to unlawfully invade hotels and annoy the proprietors and guests as they saw fit," the plaintiff's suit for an injunction falls where the police visits and inspections are shown to be not unlawful, but in pursuance to statutory command.

However onerous it may appear that the police shall come with frequency into premises where the liquor traffic is carried on under a claim of the right of inspection to determine violations of the act, this is one of the burdens which the act inflicts upon the holder of the certificate, and subject to which he accepted it and traffics in liquors. The state imposed its restrictions and limitations upon him when he applied for and obtained his liquor tax certificate, and he conducts his business subject to the conditions with which the state surrounded his use of its license. Motion for an injunction denied, with $10 costs.

Motion denied, with $10 costs.

---

(68 Misc. Rep. 393.)

### CARSWELL v. HUDSON VALLEY RY. CO.

(Supreme Court, Trial Term, Washington County. July, 1910.)

1. EMINENT DOMAIN (§ 119*)—STREETS—RIGHTS OF ABUTTING OWNERS—EASEMENTS.

One whose premises extend to the line of a village street has property rights in the nature of easements of light, air, and access, which cannot be taken away without compensation, and any use of such street, inconsistent with its use as a public street, is a taking of property for which he is entitled to recover damages; and one owning to the center of the street has the same easements as the abutting owner, though he holds the title to the street, subject to its use as a public highway, and he is entitled to the same compensation for taking away such easements, and to compensation for the additional burden put upon the street by the construction and maintenance of an electric railroad.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 307; Dec. Dig. § 119.*]

2. EMINENT DOMAIN (§ 119*)—STREETS—NEW STREET USE—DISTURBANCE OF RIGHTS OF LIGHT, AIR, AND ACCESS.

The mere disturbance of rights of light, air, and access of the owners of property abutting on a village street, by imposition of a new street use, gives them no right of action, though such use may subject them to injury.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–307; Dec. Dig. § 119.*]

3. EMINENT DOMAIN (§ 119*)—STREETS—ADDITIONAL SERVITUDE—STREET RAILWAY.

Neither the owner of lands abutting upon a village street nor the owner of lots to the center of the street, subject to the public easement, has any right of action because of the construction under proper authority

of a street railway; it being a proper street use and imposing no additional burden.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 307; Dec. Dig. § 119.*]

**4. STREET RAILROADS (§ 26*)—CONSENT OF PROPERTY OWNERS—NATURE.**

The consent of owners of property bounding a street to the construction of a street railway therein, executed in the usual form, is not a mere license, to be revoked at will, nor is it revoked by a transfer of the property, and is sufficient to defeat an equitable action to restrain the maintenance of the railroad by a grantee of the consenting owner, where the road was in operation at the time of his acquisition of title, though the consent had not been recorded.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 79–85; Dec. Dig. § 26.*]

Action by Mary Carswell against the Hudson Valley Railway Company. Judgment rendered.

Jenkins, Kellogg & Barker, for plaintiff.
James McPhillips, for defendant.

VAN KIRK, J. The summons in this action is dated February 25, 1910, and the answer is marked "Received" March 30, 1910. This action is brought in equity by the plaintiff, who is a property owner along Broadway in the village of Ft. Edward, to recover a judgment restraining and permanently enjoining the defendant from maintaining its tracks on Broadway across the premises above described, and that it be compelled to restore the street in front of said premises to its former condition, and for such other and further relief as to the court may seem just. There were no damages claimed, nor was any evidence offered to show any amount of damages suffered; but some evidence was received to show that substantial injury had been done to the property, as a basis of injunctive relief. The facts of the case are as follows:

On June 25, 1885, the Glens Falls, Sandy Hill & Ft. Edward Street Railroad Company procured a franchise and thereunder constructed a horse railroad upon Broadway street in front of the premises now owned by the plaintiff in the village of Ft. Edward. In or about the year 1891 the motive power was changed to electricity, under a franchise granted by the board of trustees on the 15th day of September, 1890. Under these franchises the railroad company was required: (1) To lay the rails so that the top would not be more than one-half inch above the surface of the street; (2) whenever the surface of the street was disturbed, to immediately restore the same to its former condition of usefulness; (3) to maintain a wooden guard, not less than five inches wide, the upper surface of which should not be more than one-half inch below the top of the rail; (4) whenever the board of trustees changed the grade of any portion of the street, to change the grade of its railroad to conform thereto.

The plaintiff purchased for value the piece of property known as the Kenyon property in 1905 and the Vanderwerker property in 1907. Since some time prior to 1890, the railroad has been maintained and operated in the highway in front of plaintiff's premises continuously,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

and since about 1891 as an electric railroad. In front of the Vander-werker property the rails of the railroad are practically flush with the general surface of the street. They are on the side of the street next the plaintiff's property, and the part of the street surface used for general travel lies easterly of the rails. The Vanderwerker property is bounded by the side of the street; that is, the plaintiff does not own title in the street. In front of the Kenyon property the track is laid in the street, but along its northerly side. The railroad bed is elevated above the general surface of the street some 20 inches or more, and in consequence makes it impracticable to enter said property from Broadway with vehicles. This Kenyon lot runs to the center of the street. At the time the plaintiff purchased the Kenyon property, the roadbed of the defendant and the surface of Broadway were practically in the same condition as at present; that is, the railroad bed was considerably elevated above the general surface of the street. There is no proof in the case as to any grade established by the village authorities in front of either property, further than it may be presumed that the general surface of the street is the established grade.

T. S. Coolidge, plaintiff's predecessor in title, executed a consent as follows:

"I, Thomas S. Coolidge, the undersigned, being owner of real estate and property in the corporation of the village of Ft. Edward, Washington county, N. Y., bounded on the line of track of the Glens Falls, Sandy Hill & Ft. Edward Street Railroad Company, situate in and along Broadway street in said village, from a point in the northerly line of said corporation or village where said Broadway St. commences to a point therein opposite the Bradley Opera House, do hereby consent that said company may construct, maintain, operate, use, and extend its railroad on the surface of the soil through, upon, and along said street and route above described, and consent to the operating of the cars of the Glens Falls, Sandy Hill & Ft. Edward Street Railroad Company in, upon, and along said street or route on the line of the track as now located as above described by electricity.     Thomas S. Coolidge. [L. S.]
"Dated Sept. 8th, 1890."

This consent was duly acknowledged and filed, but not recorded.

First. What are the property rights of persons owning property along a village street?

A person whose premises abut on a street and do not extend beyond the street line has property rights in the nature of easements of light, air, and access (White v. Manhattan R. Co., 139 N. Y. 23, 34 N. E. 887; Story v. New York El. R. Co., 90 N. Y. 122, 43 Am. Rep. 146), which property rights could not be taken away without compensation; and any use of such street inconsistent with its use as a public street is a taking of property for which the owner is entitled to recover to the extent of the damages occasioned thereby (Kane v. New York El. R. Co., 125 N. Y. 164, 26 N. E. 278, 11 L. R. A. 640, and cases cited). The mere disturbance of their rights of light, air, and access by the imposition of a new street use must be borne, and gives no right of action, though such use may subject the lotowners to injury. The use of the street for a horse or electric railroad, unless such use practically closes the street and is unlawful, is a street use which may be permitted; and such abutting owner has no legal redress, in the absence of negligence in the construction or operation of the road, al-

though it may seriously impair the value of his property. Kane Case, 125 N. Y. 164, 176, 26 N. E. 278, 11 L. R. A. 640.

A person owning to the center of the street has the same easements or property rights as the abutting owner, and also owns the title, subject to the use of the street as a public highway. He is entitled to the same compensation for taking away such easements, and also to compensation for the additional burden put upon the street by the construction and maintenance of the electric railroad. Paige v. Schenectady R. Co., 178 N. Y. 102, 70 N. E. 213. As appears in the recital of facts, the Vanderwerker property is bounded by the side of the street, the Kenyon property runs to the center of the street, and this plaintiff has the rights above stated as to her two properties, respectively, except as the consent executed by Mr. Coolidge, September 8, 1890, affects those rights.

Second. What are the rights of the defendant, under the statute and the consent executed by Mr. Coolidge, the then owner of plaintiff's premises?

Railroad Law (Laws 1905, c. 650; Laws 1907, c. 156) § 91, as it was in 1905 and 1907, when plaintiff purchased her property, provides:

"Whenever heretofore or hereafter a railroad has been or shall be constructed and put in operation for one year or the motive power thereon has been or shall be changed and put in operation for a similar length of time, such facts shall be presumptive evidence that the requisite consents of local authorities, property owners and other authority to the construction, maintenance and operation of such railroad or change of motive power have been duly obtained."

This presumption has not been overcome by the evidence in the case, and therefore stands. When this action was begun, defendant had been operating its road for more than one year by electricity. So that the fact is established that the defendant has its franchise, and that it was legally entitled to build, and is legally operating, its railroad in Broadway in the village of Ft. Edward in front of the plaintiff's premises.

The defendant cannot be restrained at the instance of plaintiff from maintaining its road, if it has acquired the right to maintain it and operate it in front of the plaintiff's premises. The defendant claims that it has acquired this right by the Coolidge consent. This consent is in the usual form for such purpose. It is not a mere license, to be revoked at will, nor is it revoked by a transfer of the property. Adee v. Nassau El. R. Co., 65 App. Div. 529, 72 N. Y. Supp. 992, affirmed 173 N. Y. 580, 65 N. E. 1113; Paige v. Schenectady R. Co., 178 N. Y. 102, 112, 113, 70 N. E. 213. Such consents have been repeatedly upheld in our courts to defeat an equity action to restrain the maintenance of a street railroad which was being operated according to the terms of its charter. Smyth v. Brooklyn U. El. R. Co., 193 N. Y. 335, 85 N. E. 1100, 23 L. R. A. (N. S.) 433, reversing 121 App. Div. 282, 105 N. Y. Supp. 601; Paige v. Schenectady R. Co., 178 N. Y. 102, 112, 70 N. E. 213; White v. Manhattan R. Co., 139 N. Y. 19, 34 N. E. 887. In the Smyth Case, the consent was not recorded, because neither acknowledged nor attested (121 App. Div. 282, 105 N. Y. Supp.

601); and in the Thompson Case, decided in the Paige Case, the plaintiff, Thompson, was the grantee of the consenting property owner.

The consent is, therefore, a bar to this action, except as to the Kenyon property, where the defendant is maintaining its road considerably above the grade. Under the charter, the rails of the road are to be laid practically flush with the surface of the street. If the surface of Broadway, in front of the Kenyon property, were raised to the surface of the railway, the plaintiff would have no cause of action to restrain the defendant from the present use of its road. It does not appear whether or not the trustees of the village of Ft. Edward have fixed the grade of this portion of Broadway; but the presumption is that the general surface of the street is at the established grade. The railroad company is authorized to maintain its road in this street, but its authority is limited to the maintenance of the road under the terms of the charter or franchise. It is not now being so maintained in front of the Kenyon property. The consent given by Coolidge was a consent to maintain and operate the road according to the terms of the franchise; and the surface of the railroad must conform to the surface grade of the street. If, at the time the consent was given, it was known that the railroad was to be maintained with its roadbed elevated above the general surface of the street, it might be claimed that the consent was a bar to a claim for any damage occasioned to the property by so maintaining an elevated line. This would seem to be the holding under the elevated railroad cases, but the proof does not justify such a finding. But inasmuch as the defendant is under its charter obligated to maintain its line, and inasmuch as the public has a right to require it to maintain and operate its electric road, an unconditional restraining order should not issue.

The above decision does not involve the question whether or not plaintiff, as a bona fide grantee, whose deed was recorded before the Coolidge consent was recorded, still has an action for damages to her property because of the railroad being maintained in front of and upon her property. Adee v. Nassau R. R. Co., 65 App. Div. 529, 72 N. Y. Supp. 992; Foote v. Metropolitan El. R. Co., 147 N. Y. 367, 376, 42 N. E. 181, 184. In the latter case it is said:

"I think the plaintiff was under no obligation to look beyond the records for anything affecting his title to the land he was about to purchase."

In the Foote Case the railroad company was operating its road along the street at the time the plaintiff purchased.

But such damages cannot be allowed in this action, first, because there is no proof in the case upon which the amount of damages may be calculated; and, second, because it is solely an equity action brought to restrain the defendant. Nor does this decision involve the question whether or not plaintiff's property has been injured by reason of raising the grade of the street. If the grade has been changed, and thereby damage done to the plaintiff's property, the liability therefor rests upon the village of Ft. Edward.

The plaintiff is entitled to judgment determining that the railroad must be operated with its rails substantially flush with the surface of the street, and further providing that the defendant be restrained from

maintaining and operating its road in front of the Kenyon property with the rails above the general surface of the street higher than provided in the franchise, but that this restraining order shall not be effective until three months after notice of the entry of judgment is served upon the defendant, within which time the grade of Broadway in front of the Kenyon premises may be determined or fixed and defendant's road made to conform thereto. Plaintiff is entitled to costs of the action. Findings and decision may be entered accordingly.

Judgment accordingly.